# STATE v. MICHAEL D. FERRARO.

152 N. W. (2d) 183.

July 7, 1967—No. 40,391.

*C. Paul Jones*, State Public Defender, and *Murray L. Galinson*, Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Gerard Snell,* Solicitor General, and *William B. Randall,* County Attorney, for respondent.

NELSON, JUSTICE.

Appeal from a judgment of conviction.

Defendant was arrested on July 20, 1965, and on August 3, 1965, arraigned in the Ramsey County District Court pursuant to an information charging him with aggravated assault in violation of Minn. St. 609.225, subd. 2. He entered a plea of not guilty. On October 18, 1965, he waived a jury trial, and a trial before the court commenced the same day. At its conclusion he was found guilty and was thereafter sentenced to the Minnesota Youth Conservation Commission according to law.

The incidents giving rise to the charge of aggravated assault took place shortly after midnight on July 20, 1965, at which time defendant was 18 years of age. Three girls occupied an apartment on Portland Avenue in St. Paul. Defendant was acquainted with one of the girls—Kathleen Merth—and had visited at the apartment on previous occasions. Kathleen had asked defendant to come over about 5 p. m., July 19, but he did not arrive at that time. At 1 a. m., after the girls had retired, defendant came to the apartment and began knocking at the door. When the girls would not admit him, he began pounding more violently until they finally let him in. The caretaker's wife came up to the third-floor apartment to see what the trouble was. She told defendant to leave and he refused to go. Her husband then came up to the apartment and she went to call the police. When the caretaker saw the damage defendant had done to the door, he told him he would keep him there until the police arrived. Defendant struck the caretaker on the side of the head with a glass candle holder and fled.

Defendant was arrested shortly after leaving the apartment. The police officers took defendant to Ancker Hospital at about 2 a. m. because he had some minor head injuries which he had received prior to the arrest. After receiving medical attention, defendant was taken to the police station and at 11:41 a. m. a statement was taken from him by a police officer and was transcribed. The statement was then presented to defendant for

his signature at 6:30 p. m., and after personally making corrections in the statement he signed each page.

■ The only issues involved are (1) whether defendant was denied the right to counsel during interrogation and whether his statement was involuntary; and (2) whether defendant was denied effective assistance of counsel at the trial due to counsel's failure to object to the reception of defendant's statement in evidence.

The state argues that defendant is attempting on appeal to present facts and raise issues which were known to him at the time of trial, but not then presented or raised, and has moved for an order striking a post-trial affidavit presented by defendant (designated exhibit A) and all portions of "Argument I and II" of defendant's brief based upon the affidavit on the ground that they have no foundation in the record and are based entirely on material extraneous to it.

According to defendant's affidavit he was arrested early the morning of July 20 and from then until 6:30 p. m. the same day, a period of approximately 15 hours, he was under police control and, although he requested the use of a telephone to call an attorney or his family, he was informed by the police he would not be allowed to contact anyone until after he made a statement. Defendant also stated in the affidavit that he "was not allowed to consult with anyone from the time of his arrest until after 6:30 p. m. on the evening of July 20, 1965," by which time he had already signed the statement regarding the alleged crime. Defendant further stated that he was never told of his right to remain silent and his right to counsel until a stenographer appeared to take his statement after he had already given an oral one; that he had no idea of the purpose of giving a statement or that it would be, or could be, used in court; that he did not realize he would be charged with an offense of the seriousness of aggravated assault and thought he would be charged only with a misdemeanor for being drunk or disturbing the peace; that he feared that the police officers would cause him bodily harm if he did not cooperate with them; and that he has only a sixth-grade education and that he did not understand the importance nor the full contents of the statement he made to the police.

In Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d)

694, the United States Supreme Court established what an accused must be informed of before a statement given to the police will be considered voluntary. The court said that the accused must be informed that (1) he has the right to remain silent; (2) any statement he makes may be used as evidence against him; (3) he has the right to the presence of counsel during the interrogation; and (4) if he cannot afford an attorney he may have one without cost prior to the questioning. The evidence taken at the trial in the instant case indicates that at least one of the four prerequisites mentioned in the Miranda case was lacking at defendant's interrogation. The investigating officer testified that he did not inform the defendant that he could obtain free legal assistance before answering any questions of the police.

However, this case came to trial in October 1965, and the Miranda decision came down in June 1966. Shortly afterward the Supreme Court in Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882, held that the holding in Miranda was not retroactive. Thus, it would appear that the standards established in the Miranda case would not be applicable to this case.

In Escobedo v. Illinois, 378 U. S. 478, 490, 84 S. Ct. 1758, 1765, 12 L. ed. (2d) 977, 986, the Supreme Court stated:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the assistance of counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U. S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

Despite the affidavit, from the testimony disclosed by the transcript of the trial, there seems to be little question that the defendant here was not coerced into giving his statement to the police. The transcript in-

dicates that the defendant was held by the police for 15 hours without benefit of counsel. However, the testimony indicates that the defendant was informed "of his right to counsel, that he could get an attorney if he so desired, that he did not have to say anything to the Police Department, and anything he did say could be used against him or for him in a court of law." Furthermore, the police officer who interrogated defendant testified that defendant did not ask to use the telephone or for the police to call anyone for him. The statement was read over by defendant before he signed it, and he made corrections in the statement by scratching out portions of it. From the testimony it would appear that the interrogation by the police officers and the resulting statement would be admissible under the holding in Escobedo v. Illinois, *supra.* It seems rather strange that defendant should make the statements contained in his affidavit some time after taking his appeal, in view of the fact he was present at the trial, was fully cognizant of the testimony of the police officers, and could have told his court-appointed counsel that the statements which the officers were making were untrue if, in fact, they were. The affidavit of defendant and the testimony of the police officers as to what transpired during the interrogation are so diametrically opposed that it would seem only natural that defendant would have spoken out in opposition to the testimony during the trial or when questioned by the court before sentence was pronounced.

■ This court in State v. Soward, 262 Minn. 265, 114 N. W. (2d) 276, restated the longstanding rule in this state that the appellate court cannot consider matters which are not properly raised and acted upon below and which are not properly saved for review and made a part of the record. This would apply to the post-trial affidavit of defendant. More recently, in State v. Taylor, 270 Minn. 333, 339, 133 N. W. (2d) 828, 832, this court stated:

"* * * [W]e are prevented from determining the Federal constitutional questions raised by two rules of state law long established by the decisions of this court: (1) The admissibility of evidence cannot be questioned for the first time on appeal; and (2) convictions will not be set aside for the trial court's failure to give a cautionary instruction with

respect to the evaluation of evidence unless at trial such instruction has been requested or exception taken to the failure of the trial court to give it. In this case, the testimony of the police officers with respect to the admissions made by defendant was received by the trial court without any objection whatever. There was no attempt at trial to urge upon the trial court cautionary instructions with respect to the admissions if considered involuntary by the jury, and there was no exception taken to the instructions as given."

This same rule should be applied to the case now before this court, even though a jury trial was waived. It should be pointed out that the decision of defendant and his counsel to try this case before the court without a jury might well have had the effect of mitigating any prejudice to defendant even if the confession were inadmissible. Actually, the testimony of the occupants of the apartment, as well as the caretaker and his wife, was so overwhelmingly against defendant that reception of the confession could scarcely have created much prejudice against him.

■ Before an indigent can assert that he was denied due process because of the incompetence of his appointed counsel, the representation must be so incompetent as to render the trial a farce or a sham. Rivera v. United States (9 Cir.) 318 F. (2d) 606. The bare assertion that the attorney for the accused is not competent is not of juridical significance. State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785.

Defendant alleges that counsel was incompetent in that he failed to object to the reception of defendant's confession into evidence. The transcript on appeal indicates that counsel for defendant requested permission to examine the police officer on the stand at the time that the state offered the statement in evidence, for the purpose of laying a foundation for an objection. After inquiring of the officer as to when the statement was typed up, what conversation he might have had with defendant, and his opinion about the appearance and demeanor of defendant, counsel then had a private conversation with defendant. Only after this conversation did counsel allow the statement in evidence. This would tend to indicate either that counsel had no proper objection to the statement or that he felt that there were portions of it which would be beneficial to defendant's

210

case. Defense counsel's activities indicate, we think, care and forethought rather than incompetence in not objecting to the reception of the statement in evidence.

Affirmed.