STATE v. MERLIN CLAIR BEAN.
STATE v. LOIS ANN LeMAY.*

157 N. W. (2d) 736.

March 29, 1968—Nos. 40,273, 40,302.

* Certified to U. S. Supreme Court July 26, 1968.

36

*Douglas W. Thomson,* for appellants.

*Douglas M. Head,* Attorney General, *William B. Randall,* County Attorney, and *Thomas M. Quayle* and *Thomas Poch,* Assistant County Attorneys, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeals by defendant Merlin Clair Bean and defendant Lois Ann LeMay argued jointly before the supreme court.

Bean appeals from an order of the district court denying his motion for a new trial or in the alternative for a judgment of acquittal. He was convicted of burglary under Minn. St. 609.58 and aggravated assault under § 609.225, subd. 2, and the court imposed a sentence of not more than 5 years' imprisonment on the aggravated assault conviction but no sentence on the burglary charge (apparently on the basis that the burglary and assault constituted a single course of conduct within the purview of § 609.035).

Prior to trial Bean challenged evidence obtained as a result of searches and seizures, also statements made by him to police officers.

Miss LeMay was tried on a two-count indictment charging her jointly with Bean with the crimes of burglary and aggravated assault. She was acquitted of aggravated assault but convicted of burglary and sentenced to up to 5 years' imprisonment. Prior to trial Miss LeMay challenged evidence obtained as a result of searches and seizures. A joint hearing was held with Bean. Inasmuch as the issues raised by Miss LeMay on appeal are the same as those raised by Bean as regards searches and seizures and are based upon an identical record, Miss LeMay in her brief adopts by reference the statement of facts contained in Bean's brief under the heading of "Arrest, Search and Seizure." She also adopts by reference the argument in Bean's brief on the same issues raised in both appeals.

On the evening of August 10, 1965, a burglary of the Statewide Engine Company at 2286 Como Avenue was reported to St. Paul police. One witness had observed a man inside the Statewide office who was of early middle age and was wearing a light shirt and dark pants. Two witnesses had heard what sounded like a firecracker and moments later a stocky man of the same description was seen running with a woman from behind the Statewide building. They observed the couple drive off in a white 1965 Ford, the license number of which they reported to police. Another witness, inside the building at the time, saw a flash of light and heard a shot.

Ownership of the Ford was traced to Bean, who lived in North St. Paul. Gary Johnson, a police officer from North St. Paul, was alerted to the burglary and given a description of the suspect by the Ramsey County sheriff's dispatcher. Police officers from Maplewood, who had also received information on the suspect, informed Johnson that the man's name was Bean. With this information, Officer Johnson, who knew the suspect personally, proceeded to Bean's address, arresting him when he arrived home in a different vehicle. Bean was arrested at gunpoint. Although some words were exchanged between Bean and Officer Johnson before other officers arrived, as Bean claims, he was not apprised of any rights he may have had as an accused. [1]

Shortly thereafter, a search was commenced for the suspect's female companion. Basing their suppositions on the likelihood that Bean was the male burglar, the police obtained the name of Miss LeMay, a friend of Bean who had been a witness in an earlier criminal action involving Bean. St. Paul police officers were given what information the dispatcher had on the burglary and on Bean and Miss LeMay, and were instructed to proceed to Miss LeMay's address "to arrest her" on suspicion of burglary if they found the Ford there.

Finding the Ford in the yard at Miss LeMay's address, the officers called Miss LeMay to her front door. She identified herself after they told her who they were. She was told that she must answer questions in connection

---

[1] The arrest took place in August 1965, well before Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, which is not retroactive. Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882.

with the burglary. When, after waiting 20 minutes for her to dress and let them in, the officers were refused entrance, they broke in through the front screen door. On a table in the dining room they found a loaded .38-caliber revolver. A further check of the house revealed two shotguns. A thorough hunt through the house followed. In that connection, Officer Louis Horvath testified:

"* * * At the time we didn't know how many people were involved— we thought there might be somebody else in the house—and having found one loaded gun already, and two shotguns, we decided we'd better look through the house to see if there was anybody else in the house hiding. And that's what we proceeded to do."

While the police officers waited for Miss LeMay to dress, they began preparations for towing in the Ford. Officer George Michael said that he "went through the car [at the LeMay residence] and got the serial number and inventoried the property that was in the car, took out what I thought was of value and placed it in our squad." Items Officer Michael thought "of value" included a Motorola two-way radio and two small citizen band radios in the front seat. From the glove compartment he removed field glasses, a leather holder containing six .38-caliber bullets, and a pair of rubber gloves.[2]

In neither case was the suspect arrested under authority of a warrant, and although the police officers later obtained a search warrant in the LeMay case, they did not have one when the original search of the LeMay premises took place. On appeal Miss LeMay argues that evidence collected from her house was the fruit of an illegal search because the police had no warrants; because they failed to announce the purpose of their presence at her residence; and because the search was general. Although Bean does not appear to challenge the legality of his arrest, he does protest that statements made by him at the time of his arrest are inadmissible as evidence because he had not been advised of his rights under Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694.

Before trial both defendants moved to suppress the evidence mentioned

---

[2] The trunk of the car was locked and therefore not searched.

above. At a special hearing the trial court denied both motions, treating them as one matter.

Defendants Bean and LeMay each raise the same assignment of error that the court erred in denying their motions for suppression of evidence obtained by searches and seizures. In addition, Bean claims the court erred in holding that certain statements made by him were voluntary. Both defendants raise these same legal issues:

(1)    Whether a forceful nighttime entry into a dwelling to arrest a person reasonably believed to be within, upon probable cause that she (LeMay) had committed a felony, where no reason appears why an arrest warrant could not have been sought, was consistent with the Fourth Amendment.

(2)    Whether the search of an unoccupied automobile on private property without a warrant and prior to any arrest was valid.

(3)    Whether a search for mere evidence is reasonable.

(4)    Whether under the circumstances here the search of Miss LeMay's premises was constitutional.

The trial court held in the affirmative on all those issues.

Bean also raised the issue as to whether statements made by him under arrest at gunpoint and without being fully advised as to his rights of counsel, as to his right to remain silent, and that anything he said could be used as evidence against him, were voluntary. The trial court held in the affirmative.

■    At the outset, it is our opinion that there was probable cause for the arrest of defendants Bean and LeMay under the circumstances of this case. It appears to us that the officers who ordered and effected their arrest had reasonable grounds to believe that they had committed a felony. Minn. St. 629.34; State v. Olson, 271 Minn. 50, 135 N. W. (2d) 181; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. ed. 543. Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man to believe that the accused is guilty. Garske v. United States (8 Cir.) 1 F. (2d) 620; see, also, People v. Ingle, 53 Cal. (2d) 407, 2 Cal. Rptr. 14, 348 P. (2d) 577. Each case must

be decided on its own facts and circumstances. The question to be answered is whether an officer in the particular circumstances, conditioned by his observations and information and guided by all of his police experiences, could reasonably have believed that a crime had been committed by the person to be arrested. State v. Sorenson, 270 Minn. 186, 134 N. W. (2d) 115.[3]

The record here would indicate that the officers, when they arrested defendants, had in their knowledge what amounted to probable cause or reasonable grounds which gave them the power to arrest defendants without a warrant, as their information went well beyond mere suspicion.

It is our opinion under the rules set out above that the police officers here had a legal right to use force, as they did, in effecting their entry into the residence of Miss LeMay about 3 a. m. on August 11, 1965. Defendants' counsel concedes that the constitutional validity of the search in this case must depend upon the validity of Miss LeMay's arrest. He argues that whether that arrest was constitutionally valid depends in turn upon whether at the moment of her arrest the officers had probable cause to make it. We believe they did.

There is testimony that the officers informed Miss LeMay of their authority and purpose in being there, although she denies that. The record satisfies us that a felony had in fact been committed, and the Ford car believed to have been an instrumentality in that crime was found at the LeMay residence. To constitute probable cause, the evidence connecting the suspect with the crime need not be such as would also convict the suspect.

---

[3] Minn. St. 629.34 provides: "A peace officer may, without warrant, arrest a person:

"(1) For a public offense committed or attempted in his presence;

"(2) When the person arrested has committed a felony, although not in his presence;

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; or

"(4) Upon a charge made upon reasonable cause of the commission of a felony by the person arrested.

"To make such arrest the officer may break open an outer or inner door or window of a dwelling house if, after notice of his office and purpose, he shall be refused admittance."

United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. ed. (2d) 864; State v. Harris, 265 Minn. 260, 121 N. W. (2d) 327, certiorari denied, 375 U. S. 867, 84 S. Ct. 141, 11 L. ed. (2d) 94.[4]

Miss LeMay next argues that police procedure in entering her house was irregular in so far as the officers failed to announce the purpose of their mission, a requirement of § 629.34 when they have no arrest warrant. This argument is not convincing in light of evidence produced at the hearing on the motion to suppress. Officer Horvath testified twice during the hearing that Miss LeMay was informed, before the police entered her house, that she was wanted in connection with the burglary on Como Avenue. Later in the hearing Officer Edward Gibbons said substantially the same thing.

■ In our opinion the search of the Ford automobile on the LeMay premises without a warrant and prior to any arrest was valid under the facts and circumstances here. The record shows that the police had been alerted to the fact that Bean was driving the automobile in question when he left the scene of the crime. It further shows that when he returned to his home he did not have the Ford, which was found a few hours later at the home of Miss LeMay. With the knowledge the police had that a felony had been committed and that the car they located at Miss LeMay's residence had been an instrumentality in committing the crime, we see no reversible error in connection with the search made by the officers on the premises at that time. The search of the car's interior appears to us to have been justified in order to safeguard items of value unrelated to the felonies, as well as to ascertain if there were any items involved in the crime. The disclosure of the contents of the glove compartment showed, among other things, six bullets of the same caliber as the revolver found on Miss LeMay's premises.

■ With respect to the claims that the search was too general and that it turned up "mere evidence," we see no merit to either argument. Defendants cite Harris v. United States, 331 U. S. 145, 67 S. Ct. 1098,

---

[4] Since we decide the warrant was unnecessary, a discussion of defendants' claim that the after-acquired warrant was defective would also seem unnecessary.

91 L. ed. 1399, for the proposition that "mere evidence," as distinguished from instrumentalities of the crime, is inadmissible if seized without a warrant. Although they concede that the United States Supreme Court no longer recognizes such a distinction (Warden v. Hayden, 387 U. S. 294, 87 S. Ct. 1642, 18 L. ed. [2d] 782), defendants insist that it was in effect at the time the seizures in this case were made. The difficulty with defendants' position is that they too easily classify the bullets and gloves as "mere evidence," when the Harris case does not contemplate such a narrow classification. In Abel v. United States, 362 U. S. 217, 80 S. Ct. 683, 4 L. ed. (2d) 668, rehearing denied, 362 U. S. 984, 80 S. Ct. 1056, 4 L. ed. (2d) 1019, the United States Supreme Court ruled that evidence of espionage, seized under authority of a search for materials proving deportability, was not inadmissible evidence within the Harris doctrine. The policy behind the rule permitting police officers to search areas under suspects' control is primarily based on the need of the police to protect themselves, to prevent escape, and to preserve pertinent evidence. Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. (2d) 777.

Here, when the police entered the house they came upon a loaded revolver and two shotguns. It is our opinion that under all of these circumstances and conditions the search was reasonable. State v. Sorenson, *supra.*

■ In light of the foregoing statements and rules, we believe that under the circumstances here the search of Miss LeMay's premises was constitutional.

■ With respect to Bean's claim that statements made by him at the time of his arrest were inadmissible, it is our opinion that they were properly admitted into evidence. The trial of defendants was prior to the Miranda case, the principles of which are not retroactive. Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882; State v. Ferraro, 277 Minn. 204, 152 N. W. (2d) 183; State ex rel. Gerberding v. Tahash, 275 Minn. 195, 146 N. W. (2d) 541.

Counsel for Bean cites Culombe v. Connecticut, 367 U. S. 568, 81 S. Ct. 1860, 6 L. ed. (2d) 1037, reminding us that confessions emanating

from a will overborne are not admissible. We cannot see where the rule set out in that case applies under the circumstances here.[5]

With respect to the assignment of errors and legal issues raised jointly by both defendants, we find no reversible error and hold that the trial court should be affirmed.

Affirmed.

---

[5] When Bean was arrested Officer Johnson questioned him regarding his possession of the coffee can with the coins. Bean replied that it was part of a "coin collection." Johnson further asked him where he had been earlier and Bean answered, "Just out goofing around."