PEOPLE v PRICE

1. SEARCHES AND SEIZURES—ARREST—SEARCH WITHOUT WARRANT—
    PROBABLE CAUSE.

    The legality of a search made upon arrest, where there are no
    warrants for either the arrest or the search, depends upon the
    existence of probable cause for the arrest.

2. ARREST—PROBABLE CAUSE—INFORMANTS—RELIABILITY.

    Articulable facts which provide the basis for considering an
    informant reliable and the underlying circumstances on which
    the informant based his tip must be demonstrated by the
    people when seeking to establish probable cause for an arrest
    upon information received from the informant.

3. ARREST—PROBABLE CAUSE—VERIFIABLE INFORMATION—INFORMANTS
    —RELIABILITY.

    Arresting officers possessed sufficient factual information to sup-
    port a finding of probable cause for the arrest of a defendant
    without a warrant where the information came from a reliable
    informant and where all of the information which could be
    verified was in fact corroborated on the scene immediately
    prior to the defendant's arrest.

4. INDICTMENT AND INFORMATION—REISSUANCE OF COMPLAINT—DOU-
    BLE JEOPARDY—COLLATERAL ESTOPPEL.

    No proceeding in a criminal case can operate as a bar to further
    prosecution until the accused has been put in jeopardy, and
    this cannot occur until he has been placed upon trial; therefore,
    the principle of collateral estoppel does not prohibit the reissu-
    ance of a criminal complaint after the quashing of a previous
    information where the deficiency in the evidence which led the
    examining magistrate to quash the first information was prop-
    erly cured in the subsequent preliminary examination.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest §§ 24, 32, 44 et seq.
[2, 3] 5 Am Jur 2d, Arrest § 46.
[4] 41 Am Jur 2d, Indictment and Information §§ 29–37.

Appeal from Wayne, Charles Kaufman, J. Submitted April 6, 1976, at Detroit. (Docket No. 21912.) Decided May 19, 1976.

Rufus W. Price was convicted of possession of cocaine. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Criminal Division, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Gerald Curtis,* for defendant on appeal.

Before: D. F. WALSH, P. J., and ALLEN and M. J. KELLY, JJ.

PER CURIAM. Defendant appeals from his conviction and sentence on the charged offense of possession of cocaine, MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b). Two preliminary examinations were held relative to this charge in River Rouge Municipal Court, both before Judge George Mihaiu. At the conclusion of the first examination, conducted in October 1973, Judge Mihaiu quashed the information on the ground that the arresting police officers lacked probable cause to conduct a warrantless arrest and search of the defendant.

A second complaint and warrant were issued upon the same facts and another preliminary examination was held during November 1973.[1] At this second examination certain additional testimony was adduced and defendant was bound over to Wayne County Circuit Court for the instant

[1] The second preliminary examination began on November 2, 1973, before Municipal Judge Richard E. Valois and was adjourned upon defense motion, until November 23 so that it could be resumed before Judge Mihaiu.

offense. Defendant waived trial by jury, was found guilty, sentenced to serve two years probation and now appeals as of right. The two issues raised concern the validity of defendant's arrest and the constitutional propriety of the second preliminary examination.

Defendant's arrest was effectuated as a result of information supplied by a police informant. Two River Rouge police officers testified at the October preliminary examination. Dispatch officer Andrew Chirillo testified that on August 15, 1973, he was advised by fellow officers James Bates and David Bower that a narcotics informant who went by the name of "Skeet" would be telephoning that afternoon with certain information which officer Chirillo was to relay, via radio broadcast, to officers Bates and Bower. Chirillo said that he received a telephone call at approximately 5:05 p.m. from a man identifying himself as Skeet who stated that "the guy is up there with it in front of Tolbert's Party Store". This message was immediately dispatched to officers Bates and Bowers.

Officer Bates testified that he and his partner were both working in plain clothes in an unmarked patrol car on narcotics detail when they received a dispatch from officer Chirillo. Officer Bates indicated that he had met with Skeet at three o'clock that afternoon and that Skeet had agreed to get in touch if he had information that Rufus Price would be "on the street holding narcotics" that afternoon. Officer Bates further testified that Skeet was a "special employee" of the department, an informant who had furnished information on six previous occasions, three of which had resulted in convictions and that he was personally familiar with the defendant Price.

Acting upon the message received from officer

Chirillo, officer Bates and his partner drove to the vicinity of the party store where they saw the defendant sitting in the driver's seat of an automobile. As the police cruiser pulled along side of defendant's car, officer Bates ordered the defendant out and told him that he had information that he was in possession of narcotics. Bates immediately searched the defendant and found two clear plastic bottles in his shirt pocket which contained a powdery white substance later determined to be cocaine. Defendant was then placed under arrest.

At the conclusion of Bates' testimony the defendant's motion to quash the information was granted, the examining magistrate ruling that the warrantless search was illegal since the police had time to secure a warrant but failed to do so. Another complaint and warrant reissued, and the following additional testimony was presented to Judge Mihaiu at the second preliminary examination: (1) at the time of the three o'clock meeting with Skeet officer Bates had no knowledge as to whether the defendant would be in possession of narcotics or whether he would even be on the street, (2) Bates received the radio dispatch from officer Chirillo at approximately 5:05 p.m., and (3) during the summer it was extremely difficult to locate an assistant prosecutor or to find a judge after 5 p.m. for purposes of securing an arrest or search warrant. On the basis of this additional testimony Judge Mihaiu bound the defendant over to Wayne County Circuit Court.

The defendant's theory of suppression of the seized narcotics hinges on the alleged inability of the people to establish probable cause for his arrest. Since there were no warrants issued for either the search or the arrest, the legality of the search depends upon the existence of probable

cause for the arrest. See *People v Robinson,* 388 Mich 630, 634–635; 202 NW2d 288 (1972), T. G. KAVANAGH, dissenting, *Beck v Ohio,* 379 US 89, 91; 85 S Ct 223, 225; 13 L Ed 2d 142, 145 (1964), *Trupiano v United States,* 334 US 699, 708; 68 S Ct 1229, 1234; 92 L Ed 1663, 1670–1671 (1948). And where the government seeks to establish probable cause on information received from an informant the people must be able to demonstrate "(1) articulable facts which provide the basis for considering the informant reliable and (2) the underlying circumstances on which the informant based his tip". *People v Walker,* 64 Mich App 138, 143; 235 NW2d 85 (1975). See *Aguilar v Texas,* 378 US 108, 114; 84 S Ct 1509, 1514; 12 L Ed 2d 723, 729 (1964).

In the instant case, relative to the reliability of the informant, officer Bates testified that he knew Skeet, that he had been a "special employee" of the police department, that he had provided information on six previous occasions and that three convictions had been obtained as a direct result of these prior contacts.[2] Thus, the reliability of this informant was firmly established. See *Draper v United States,* 358 US 307, 309; 79 S Ct 329, 331; 3 L Ed 2d 327, 329 (1959). *Contra,* see *People v Walker, supra,* at pp 143–145, *People v White,* 392 Mich 404; 221 NW2d 357 (1974), *cert den* 420 US 912, 95 S Ct 835; 42 L Ed 2d 843 (1975).

The underlying circumstances for Skeet's information were few but easily stated. As previously indicated, officer Bates testified to a 3 p.m. meeting with Skeet on the day of defendant's arrest. It was agreed that Skeet would place a phone call to the police station if the informant saw the defendant

---

[2] In the three remaining cases, as we understand it, one of the defendants died, one case was dismissed, and one is unaccounted for in the testimony.

"on the street" and if he had information that Price would be "holding narcotics". It is clear from Bates' testimony that the defendant was known both to himself and to the informant. We find this testimony adequately relates the facts on which the informant relied for his tip to the police.

The defendant, relying on *Draper v United States, supra,* further contends that the arresting officers failed to adequately verify the information supplied by the informant. In *Draper* the physical characteristics of the defendant were set out in some detail to a Federal narcotics agent. The informant had told him that defendant would be arriving in Denver from a Chicago train, carrying a tan zipper bag, walking very fast and that he would be in possession of three ounces of heroin. Six members of the Supreme Court found this information to be sufficient to establish probable cause for defendant's arrest because of the reliability of the informant and, equally as important, because the arresting officer had personally verified "every facet of the information given him * * * except whether [defendant] had * * * the three ounces of heroin on his person or in his bag". *Draper v United States,* 358 US 307, 313; 79 S Ct 329, 333; 3 L Ed 2d 327, 332 (1959).

The information supplied by Skeet in the instant case was admittedly less detailed than that furnished by the informant in *Draper.* However, all of the information which could be verified, *i.e.,* that defendant would be in front of a particular party store at a certain time, was in fact corroborated on the scene immediately prior to defendant's arrest. Fewer details were required here inasmuch as the defendant, unlike Draper, was known to the arresting officer. On the basis of the reliability of this informant and the corroboration of the facts

supplied we hold that the arresting officers possessed sufficient factual information to support a finding of probable cause for defendant's warrantless arrest. See also *United States v Watson,* 423 US 411, 418, 424, 428–430; 96 S Ct 820, 825, 828, 830–831; 46 L Ed 2d 598, 605, 608–609, 613–614 (1976).

Moreover, we distinguish *Whiteley v Warden of Wyoming State Peniteniary,* 401 US 560; 91 S Ct 1031; 28 L Ed 2d 306 (1971), cited by defendant, where law enforcement authorities made an arrest on the basis of information supplied by a police broadcast. That information had for its source an informant whose reliability was unproven and furthermore could not have been corroborated by the arresting officer.

The second contention of the defendant is that once the information had been quashed at the preliminary examination, the prosecutor's only remedy was to seek an order of superintending control, GCR 1963, 711, and that the theory of collateral estoppel precluded the reissuing of a warrant and information based upon the same facts. The theory of collateral estoppel was summarized by Justice Stewart in *Ashe v Swenson,* 397 US 436, 443; 90 S Ct 1189, 1194; 25 L Ed 2d 469, 475 (1970), where the Supreme Court held that principle to be an integral component of the Fifth Amendment guarantee against double jeopardy:

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v Swenson, supra.*

That principle does not prohibit the reissuance of a criminal complaint after the quashing of an information based upon the same facts for several reasons. This precise issue was treated in the early case of *Missaukee Prosecuting Attorney v Missaukee Circuit Judge,* 85 Mich 138, 139; 48 NW 478 (1891), and resolved against the defendant's position, the court holding that "no proceeding in a criminal case can operate as a bar to further prosecution until the accused has been put in jeopardy, and this cannot occur until he has been placed upon trial". This holding remains a viable principle of our criminal jurisprudence. See *People v Munn,* 25 Mich App 165, 167; 181 NW2d 28 (1970), *Dimmers v Hillsdale Circuit Judge,* 289 Mich 482, 488; 286 NW 798 (1939), *People v Tillard,* 318 Mich 619, 622–623; 29 NW2d 111 (1947). See also *People v Kennedy,* 384 Mich 339, 344–345; 183 NW2d 297 (1971).

Defendant's brief does not refer us to any criminal case applying the principle of collateral estoppel apart from an instance where a claim of former jeopardy is asserted by the accused, and we are aware of none. *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), cited by defendant is simply inapposite.

Moreover, the collateral estoppel rule would not be applicable to the instant case since there was no determination of an "ultimate fact", as that term was used in *Ashe v Swenson, supra,*[3] at the initial preliminary examination. The dismissal which occurred at the first proceeding was a reflection of the examining magistrate's judgment that

[3] The term "ultimate fact" was used in *Ashe v Swenson, supra,* to refer to a fact directly relating to the guilt of the accused, without which the jury would have found him innocent, *e.g.,* identification of the defendant.

the evidence was insufficient to justify a warrant-less arrest and search. This deficiency was properly cured to the satisfaction of the trial judge in the subsequent preliminary examination.

We find no error in the proceeding whereby defendant was bound over on the second information and accordingly uphold his conviction.

Affirmed.