PEOPLE v OROZCO

Opinion of the Court

1. Appeal and Error—Motions—Quashing Information—Denial
   of Motion—Review—Evidence—Renewal at Trial.

   Appellate review of denial of a motion to quash an information is
   restricted to the evidence presented to the magistrate, without
   regard to evidence presented at trial, unless the defendant has
   reopened the suppression issue by a renewed motion during the
   trial.

2. Criminal Law—Arrest—Searches and Seizures—Probable
   Cause—Informant Tips—Specific Showing.

   Information from an unidentified informant may be used to
   establish probable cause to arrest only where the prosecution
   makes a specific showing that there was reason to conclude
   that the informant was credible and that his information was
   acquired in a reliable manner; corroboration of physical detail
   supplied by an informant does not alone give rise to an infer-
   ence that the informant learned of the suspect's criminal plans
   in a reliable manner.

3. Criminal Law—Transportation of Contraband—Automobiles—
   Inferences.

   Loading an automobile's trunk and driving it away are as consist-
   ent with innocent departure as they are with transportation of
   contraband.

Dissent by Bashara, P. J.

4. Searches and Seizures—Probable Cause—Arrest—Underlying
   Circumstances.

   *The legality of a search without a warrant depends upon the*

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 599.
[2, 5, 6, 8] 5 Am Jur 2d, Arrest § 46.
[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 37.
[4, 7] 5 Am Jur 2d, Arrest §§ 24, 32.

*existence of probable cause to arrest at the time of the search; for an informant's tip to be sufficient to establish probable cause for a search and arrest, the government is ordinarily required to establish (1) some of the underlying circumstances from which the police concluded the informant was credible or his information reliable, and (2) some of the underlying circumstances from which the informant drew his conclusion.*

5. SEARCHES AND SEIZURES—ARREST—PROBABLE CAUSE—PAST INFORMATION—INFORMANT TIPS—DETAILED ACTIVITY—CORROBORATING INFORMATION—INDEPENDENT INFORMATION.

*Probable cause for a search and arrest based on an informant's tip was sufficiently established where a police officer testified that he had received information from this source in the past "which worked out pretty good", and where the tip described the accused's criminal activity in sufficient detail that it could be concluded that the informant was not relying on casual rumor circulating in the underworld or on an accusation based merely on the accused's general reputation, and where the information in the tip was corroborated at the scene prior to the arrest and supported by information from independent police sources.*

6. ARREST—PROBABLE CAUSE—INFORMANT TIPS—CORROBORATING INFORMATION.

*Information gathered by an arresting officer corroborating an informant's tip may be used to sustain a finding of probable cause for an arrest which could not adequately be supported by the tip alone.*

7. ARREST—SEARCHES AND SEIZURES—AUTOMOBILES—PROBABLE CAUSE—SUSPICIOUS DRIVING.

*A suspicious driving pattern may be considered in determining probable cause to arrest and search.*

8. ARREST—PROBABLE CAUSE—INFORMATION OF ILLEGAL ACTIVITIES.

*Information from law enforcement agencies regarding a suspect's illegal activities may properly be considered in determining probable cause to arrest.*

Appeal from Oakland, Arthur E. Moore, J. Submitted November 8, 1976, at Lansing. (Docket No. 26419.) Decided March 29, 1977. Leave to appeal applied for.

John H. Orozco was convicted of possession of

cocaine with intent to deliver. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Lynn V. Hooe, Jr., (Owen P. O'Neill,* of counsel), for defendant.

Before: BASHARA, P. J., and M. F. CAVANAGH and D. C. RILEY, JJ.

M. F. CAVANAGH, J. The defendant appeals his bench trial conviction for possession of cocaine with intent to deliver. MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b). We reverse because the principal evidence underlying the charge was unconstitutionally seized.

We adopt the statement of facts of the dissenting opinion with but one exception. We disagree with the dissent's assertion that our review of the evidence includes the trial testimony of Detective Parks. Defendant's timely motion to suppress was denied by the district court. When he moved to quash the information in the circuit court, the case was remanded for further testimony by Detective Lester. Upon completion of the district court hearing, the circuit court reviewed the district court record and denied the motion to quash. *People v Olajos,* 397 Mich 629; 246 NW2d 828 (1976), does not change the well established rule that appellate review of the circuit court's denial of a defendant's motion to quash the information is restricted to the evidence presented to the magistrate, regardless of the nature of evidence pre-

sented at trial. *People v Charles D Walker,* 385
Mich 565; 189 NW2d 234 (1971), *People v Hall,* 375
Mich 187; 134 NW2d 173 (1965), *People v White,*
276 Mich 29; 267 NW 777 (1936).[1]

While we agree that the only manner in which
this search could be upheld would be as incident to
an arrest, we cannot agree that the authorities
had probable cause to arrest.

The informant's tip was the crux of the authori-
ties' belief that a crime had been committed and
that the defendant had participated in it. The
cases from *Aguilar v Texas,* 378 US 108; 84 S Ct
1509; 12 L Ed 2d 723 (1964), through *United States
v Harris,* 403 US 573; 91 S Ct 2075; 29 L Ed 2d 723
(1971), lay down a double requirement for informa-
tion from anonymous informants. There must be
reason to conclude that the informant was credible
and that his information was acquired in a reliable
manner. Contrary to the dissenting opinion, we
believe that this tip failed both requirements.

The only evidence on the district court record
that the informant was a credible source was the
police detective's statement, "[i]t worked out pretty
good before, sir". There are no specifics whatso-
ever. It is only a translated version of "reliable
source".[2] While the informant may in fact have
provided much reliable information in the past,
the prosecutor failed to make the necessary show-
ing.

---

[1] *People v Olajos,* 397 Mich 629; 246 NW2d 828 (1976), allows
reference to trial testimony only if the trial court has allowed the
defendant to reopen the suppression issue by a renewed motion
during the trial. In this case, Detective Parks' trial testimony was not
in response to a renewed suppression motion; it came about merely as
part of the prosecution's case.

[2] It should be further noted that the basis of the informant's
reliability was even a further step removed from the arresting officer.
This "reliable tip" was received by a detective of the Genesee County
Sheriff's Department, who, in turn, phoned the Oakland County
Sheriff's Department, the arresting agency.

Moreover, there is nothing in the tip, nor in Detective Parks' additional testimony at trial, to indicate that the information was gained in a reliable fashion. The corroborated details suggest that the informant may have seen the car and known of its destination, but none of these details indicate how the informant could forecast that the defendant made the trip to engage in a criminal transaction or more importantly, who the driver of the vehicle or defendant would be.[3] While corroboration of many physical details would lend credence to a tip that a suspect was carrying contraband, since it would infer that the informant had gained the information by personal observation, *cf. People v Chaney,* 52 Mich App 474; 218 NW2d 121 (1973), *lv den,* 390 Mich 813 (1973), corroboration of physical detail does not infer that the informant learned of the suspect's criminal plans in a reliable manner. Indeed, the dissenting opinion admits that the part of the tip which remained uncorroborated was the only part of the tip which indicated that a criminal transaction was contemplated.

Nor did the observations of the police furnish sufficient other reason to arrest the defendant. Loading an automobile's trunk and driving away are as consistent with innocent departure as they are with transportation of contraband.

We find the facts in *People v Walker,* 64 Mich App 138; 235 NW2d 85 (1975), *lv granted,* 396 Mich 812 (1976), indistinguishable, and agree with that result. The evidence should have been suppressed and the charge dismissed.

D. C. RILEY, J., concurred.

---

[3] Although the people claim probable cause to arrest based upon the given facts, it is interesting to note that the wife of the defendant was with him at all times and, in fact, was the driver of the vehicle. There apparently was not, however, sufficient probable cause to arrest her as she was released at the scene and not subsequently charged.

BASHARA, P. J. *(dissenting).* I must respectfully dissent. The facts recited below shall, in the main, serve both the controlling and dissenting opinions.

Around 4 p.m. January 16, 1974, Detective Parks of the Genesee County Sheriff's Department phoned Detective Lester of the Oakland County Sheriff's Department to convey information received from an informant. At the preliminary examination Lester testified that he was advised of the following:

" * * * a white Buick, with a possible license number, I believe it was Charles—CKM 340, coming from Saginaw to the Acosta home in Avon Township that I had knowledge of where it was located at, for the purpose of purchasing narcotics, either cocaine or marijuana."

Lester was also informed that the Buick was a "newer one", and that it would arrive "in the evening * * * or early morning hours".

Lester was familiar with the Acosta residence in Avon Township. He had previously arrested Arthur Acosta a block from the house. The Acosta home had also been under surveillance because Arthur Acosta was a suspect in a homicide. Furthermore, Lester had been supplied with a complete file on Arthur Acosta's drug dealings by various state and county narcotics intelligence units.

Police surveillance was placed on the Acosta residence. At 1 a.m. the following morning Lester was notified that a Buick fitting the description of that supplied by the informant was in the driveway of the Acosta residence.

At approximately 3 a.m. Officer Daniels, a member of the surveillance unit, drove past the Acosta home while moving to a new observation point. He

saw a man standing at the rear of the Buick with the trunk open. Upon noticing the marked patrol car, the man closed the trunk, did an about-face, and walked into the house.

Lester arrived on the scene at 3:30 a.m. He ran a check through the Law Enforcement Identification Network which determined that the automobile was a 1973 Buick Riviera registered to the defendant, John Orozco of Saginaw.

At about 6 a.m. two people left in the Buick. According to Detective Lester, the automobile "went two blocks, made a left turn, backed back up, and returned to the house". Approximately five minutes later the automobile left again with two occupants.

Shortly thereafter the car was stopped. Officer Daniels observed a hash pipe lying on the console.[1] Both occupants were searched. Thirty-four packets of cocaine were discovered on the appellant. The appellant was placed under arrest.

The appellant argues that the informant's tip was insufficient to establish probable cause for the search and arrest. The legality of the search depends upon the existence of probable cause to arrest at the time of the search. *People v Price,* 69 Mich App 363, 366–367; 244 NW2d 363 (1976). When information from an informant constitutes a substantial basis for determining probable cause, the government is ordinarily required to establish (1) some of the underlying circumstances from which the police concluded the informant was credible or his information reliable, and (2) some

---

[1] No significance can be attached to the hash pipe in determining probable cause. Detective Lester conceded that although the appellant's car was speeding, the vehicle was not stopped for that reason. Consequently the only reason that would justify stopping the car would be to search the appellant for narcotics. Therefore, at the time of the stop there had to be probable cause to justify the search.

of the underlying circumstances from which the informant drew his conclusion. *Aguilar v Texas,* 378 US 108, 114–115; 84 S Ct 1509; 12 L Ed 2d 723 (1964), *McCray v Illinois,* 386 US 300; 87 S Ct 1056; 18 L Ed 2d 62, *reh den* 386 US 1042; 87 S Ct 1474; 18 L Ed 2d 616 (1967), *People v Daniels,* 60 Mich App 458, 464; 231 NW2d 386 (1975).

The initial consideration is directed to whether Detective Parks could conclude that his informant was credible. Parks testified at the preliminary examination as follows:

*"The Court:* Let me ask you a question. Where did you get your information from? Now I'm not saying names but just how did you receive it?

*"A.* Telephone. A telephone call, sir.

*"The Court:* Telephone call. And did you know your informant?

*"A.* Well, the person that called me didn't give me the name, no.

*"The Court:* Have you ever had any information from that particular informant before?

*"A.* Yes, sir.

*"The Court:* Has that information turned out to be believable?

*"A.* It worked out pretty good before, sir.

*"The Court:* Okay. I have no further questions.

*"Recross Examination Continuing By Mr. Hooe [defense counsel]:*

*"Q.* I'm sorry. I'm a little bit confused. Did I understand you to say that the person who called did not give his name?

*"A.* No, sir.

*"Q.* Did you know who it was who called?

*"A.* I presumed.

*"Q.* You presumed but you didn't know?

"*A.* He never said his name so I just presumed it."

A reading of the transcript makes it readily apparent that Parks knew the identity of the informant. He acknowledged that he received information from this source which "worked out pretty good" in the past. This is sufficient. See *People v Budary,* 22 Mich App 485, 492–493; 177 NW2d 672 (1970). Compare *Beck v Ohio,* 379 US 89, 93–94; 85 S Ct 223; 13 L Ed 2d 142 (1964).[2]

I attach no significance in this instance to the fact that the informant was not specifically identified to the detective. This is not unusual. The relationship between an informant and a police

[2] Formerly, in determining the propriety of a motion to suppress evidence our scope of review was limited to that evidence taken at the preliminary examination. *People v Zeigler,* 358 Mich 355, 359; 100 NW2d 456 (1960). However, the recent case of *People v Olajos,* 397 Mich 629, 635; 246 NW2d 828 (1976), permits us to review the record as more fully developed at trial.
On direct examination Parks testified:
"*Q.* Where did you receive this information from?
"*A.* I received this from, as I told him, from a person that I know from Saginaw area.
"*Q.* Okay. And have you talked to this person before that day?
"*A.* Yes, I have.
"*Q.* And has this person given you information on other matters?
"*A.* On several occasions.
"*Q.* And did that information turn out to be reliable?
"*A.* Yes, it has."
On cross examination Parks further testified:
"*Q.* So you didn't know who [informant] it was?
"*A.* I did know who it was. He didn't mention the name. I knew who it was.
"*Q.* Oh, you said that you had heard, you had talked to this person before, is that correct?
"*A.* That is right.
"*Q.* How many times before?
"*A.* Oh, 25 or something.
"*Q.* How many?
"*A.* Maybe 25.
"*Q.* Did you ever know this name?"
Certainly, this testimony establishes that the police could conclude the testimony of the informant was credible.

contact is often built upon the informant's trust that identity will not be disclosed. An informant phoning a police officer would most likely prefer not to give a name, due to lack of certainty as to who may be listening in on the conversation.

The next consideration is whether the information provided by the informant contained sufficient underlying circumstances from which the informant could conclude that the occupants of the Buick intended to purchase marijuana or cocaine at the Acosta residence. The record discloses that Detective Parks was never examined regarding whether he questioned the informant about the underlying circumstances which formed the basis of the information.

In the absence of a statement detailing the manner in which the information was gathered, the tip may still be considered acceptable if it describes the accused's criminal activity in sufficient detail so that one may conclude that the informant is not relying on casual rumor circulating in the underworld, or an accusation based merely on an individual's general reputation. *Spinelli v United States,* 393 US 410, 416; 89 S Ct 584; 21 L Ed 2d 637 (1969), *People v Walker,* 64 Mich App 138, 143; 235 NW2d 85 (1975), *lv granted,* 396 Mich 812 (1976).

In the case at bar the police were apprised that a late model white Buick, license plate number CKM 340, would be leaving Saginaw and would arrive at the Acosta residence in Avon Township on the evening of January 16, or the early morning hours of January 17, to purchase marijuana or cocaine. One could reasonably infer, when confronted with such detail, that the informant obtained the information in a reliable manner. Compare *Spinelli v United States, supra.*

Additionally, the United States Supreme Court has held that where the initial impetus for an arrest is an informant's tip, corroborative information gathered by an arresting officer can be used to sustain a finding of probable cause for an arrest which could not adequately be supported by the tip alone. *Draper v United States,* 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959), *Whitely v Warden of Wyoming State Penitentiary,* 401 US 560, 567; 91 S Ct 1031; 28 L Ed 2d 306 (1971). In the instant case the independent police work corroborated every element of the tip, except whether the occupants of the Buick had completed their transaction by purchasing marijuana or cocaine. Under such circumstances it was not unreasonable for the police to stop the appellant's car and verify whether the remainder of the information was true. See *Draper v United States, supra, People v Chaney,* 52 Mich App 474, 476; 218 NW2d 121 (1973), *lv den,* 390 Mich 813 (1973), *cert den* 416 US 961; 94 S Ct 1980; 40 L Ed 2d 312 (1974).

Moreover, police surveillance of the Acosta residence provided independent supplemental information. Officer Daniels observed a man at the Buick with the trunk open at 3 a.m. Upon noting Officer Daniels' marked squad car, the man slammed the trunk and quickly returned to the house. This suspicious activity might have led the officer to conclude that the automobile was being prepared to transport contraband.

At 6 a.m. two occupants left in the Buick. They drove two blocks, backed up, and returned to the Acosta home. A suspicious driving pattern may be considered in determining probable cause. *People v Williams,* — Colo —; 541 P2d 76 (1975), cited approvingly in *People v Robinson,* 71 Mich App 287; 248 NW2d 237 (1976).

Finally, Detective Lester was in possession of information from various law enforcement agencies regarding Arthur Acosta's drug dealing activities. This information may also be properly considered. See *United States v Van Leeuwen,* 397 US 249; 90 S Ct 1029; 25 L Ed 2d 282 (1970).

I believe that the informant's tip, when considered with the corroborating information and the information gathered independently by the police, constituted sufficient probable cause to support the search and arrest.

I would affirm.