## Richmond

WILLIE LEE WILLIAMS v. C. C. PEYTON,
SUPERINTENDENT OF THE VIRGINIA STATE PENITENTIARY.

April 22, 1968.

Record No. 6670.

Present, Eggleston, C.J., Buchanan, Snead, I'Anson, Gordon and
Harrison, JJ.

*Jay M. Ball* for plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

In June, 1966, Willie Lee Williams, herein referred to as petitioner,

filed in the Corporation Court a petition for a writ of *habeas corpus* in which he alleged that he was being unlawfully held and restrained by the Superintendent of the Virginia State Penitentiary, pursuant to an order of said court entered on August 26, 1964, by which he was sentenced to serve a term of eight years in the penitentiary for armed robbery.

The superintendent filed his answer, the court appointed an attorney to represent the petitioner, and after hearing the evidence the court entered its order denying and dismissing the petition. Petitioner has appealed and is represented here by counsel appointed by the court below. In his assignments of error petitioner contends that on his 1964 trial, evidence procured by an illegal search was introduced against him; that a statement made by him was used in violation of his constitutional rights, and that he was denied effective assistance of counsel. The evidence offered on the *habeas corpus* hearing was to the following effect:

At the August, 1964, term of court the grand jury returned an indictment charging the petitioner with the armed robbery of Mrs. Emma L. Harrell. At petitioner's request the court, on August 3, 1964, appointed William E. Fulford, "a competent and experienced attorney," to defend him on this and six other indictments for similar offenses. On August 26, 1964, defendant signed a writing which stated that he had conferred with his attorney, with whom he was satisfied, and that after being advised by his attorney of his right to plead not guilty and be tried by a jury, he entered a plea of guilty. By order entered that day he was sentenced to eight years in the penitentiary.

On the hearing of his petition for *habeas corpus* petitioner testified that he was asleep in a house in Norfolk occupied by him and Clarence Perry when he was awakened between five-fifteen and five-thirty in the morning of July 25, 1964, by a noise that sounded like the house was falling down, and a police officer called out, "police officers, open the door," and "Perry, we know you're in there"; that he got up and opened the door and looked into the barrels of six revolvers, and they told him to back up. The officers began to search the house and found two guns, one in his bedroom and one in Perry's bedroom. One of the officers asked for the keys to his car and he told him he couldn't have them; that they had no search warrant for the car or for the house. The guns and some money from a wallet were introduced in evidence at his trial.

In addition to the guns, he said, the officers took two jackets, caps and a pair of gloves. He and Perry were then taken to police head-quarters where they were put in different cells.

He was questioned, he said, from six o'clock until eight-thirty or nine that morning, but he did not tell them anything about it until about ten-thirty or eleven o'clock, when he gave them a statement. Before he made the statement the officers told him he did not have to tell them anything; but, he said, Perry had already implicated him in all the robberies "and so then I gave them the statement." The statement is not in the record before us.

Petitioner testified that his court-appointed counsel talked to him three different times and then told him to plead guilty and he would make a deal with the Commonwealth's attorney; that he, Fulford, "didn't want the case anyway". Petitioner said his attorney "didn't object to nothin' ". He admitted, however, that after considering all the alternatives he freely and voluntarily entered a plea of guilty, and that he then knew exactly what the Commonwealth's attorney was going to recommend.

The following is the substance of the evidence given by the police officers:

They had had this house under surveillance since the daylight hours of the preceding day in an attempt to arrest petitioner and Perry for robberies but were unsuccessful, so three of the officers "staked out this house" and waited for their arrival. Around four or five o'clock in the morning, the officers heard a report over the air that an armed robbery had just occurred at another point. While a description of the suspects was being given, petitioner and Perry drove hurriedly around the corner, stopped in front of the house, jumped out of the car and went inside. They and the car fitted the description which had been given over the radio in the police car.

The officers went to the door and knocked and after a second knock the petitioner opened the door. The officers entered and placed both him and Perry under arrest. They were told that they were charged with several armed robberies. The officers, who had been informed that the men were armed, then conducted a search and found two pistols, one of them in the back bedroom on a dresser and the other in the front bedroom in a small drawer in a bed-side table.

Prior to questioning, the petitioner was informed that he had a right to call anyone or to talk to anyone; that he did not have to tell the officers anything or make any statement if he did not desire to do

so, and that if he did make a statement it could be used against him.

The evidence was clearly sufficient to support the judgment order of the trial court that the petition for a writ of *habeas corpus* should be denied.

[1] Contrary to the contention of petitioner, he was not subjected to an illegal search. The officers were informed by radio that an armed robbery had been committed and were given a description of the suspects and of their automobile. Very soon thereafter the petitioner and his companion drove up and hurried into the house. They and their car fitted the radio description. The officers knocked on the door and were permitted to enter. They informed petitioner and his companion they were under arrest for armed robberies and they were going to make a search of the premises.

The general power of police officers to arrest without a warrant persons charged with a felony is well settled in this State and elsewhere. *Williams* v. *Commonwealth*, 142 Va. 667, 670, 128 S.E. 572, 573; *Fuller* v. *Commonwealth*, 201 Va. 724, 113 S.E.2d 667; *United States* v. *Irby*, 304 F.2d 280, cert. den. 371 U.S. 830, 83 S.Ct. 39, 9 L.Ed.2d 67; 2 Mich. Jur., Arrest, § 8, p. 96.

The arrest being legal, the search, although made without a search warrant, was also legal. *Warden* v. *Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782.

[2] There is no merit in petitioner's contention that the statement made by him was taken in violation of his constitutional rights. The evidence supports the conclusion that it was made voluntarily, after he had been advised of his right not to make it and that if made it could be used against him. It was clearly admissible in evidence. *Cf. Biddle* v. *Commonwealth*, 206 Va. 14, 18, 141 S.E.2d 710, 713.

[3] The record does not support petitioner's contention that he did not have effective assistance of counsel. Other than the meaningless statement that his counsel did not object to anything, petitioner points to nothing that his attorney did that was wrong or that he failed to do that would have been helpful, and in presenting his written plea of guilty he stated that he was satisfied with his attorney. The record shows that at the conclusion of the testimony in the *habeas corpus* hearing, the court suggested to petitioner's counsel that he inquire from the petitioner whether he wanted to present anything else, whereupon counsel conferred with petitioner and stated to the court that they had nothing further to offer.

The judgment appealed from is affirmed and the case is dismissed.

*Affirmed and dismissed.*