## Commonwealth *v.* Hawkins, Appellant.

Submitted September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Reggie B. Walton* and *John W. Packel,* Assistant Defenders, and *Benjamin Lerner,* Defender, for appellant.

*John DiDonato, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J.*

58

*Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., April 22, 1976:

On July 7, 1973, at approximately 5:00 A.M., while sitting on the steps outside her house at 2012 Orianna Street, Roberta Coleman was approached by two men. One, David McDonald, asked her for a glass of cold water and the other, appellant, asked to use her bathroom. Although she did not know the men she nevertheless admitted them to her home. After returning from the bathroom appellant told Miss Coleman: "This is a stick-up," and proceeded to tie her up with an extension cord and place a jacket over her head. The men then removed $15 from Miss Coleman's person and took various other items from her home, i.e., her baby's bank, an electric clock, two watches, two televisions, a toaster, an electric can opener and a barbecue grill. They loaded the large items on Miss Coleman's child's wagon and left. After freeing herself, Miss Coleman called the police, who arrived within ten minutes. After the police arrived, a man who wished to remain anonymous informed both Miss Coleman and the police that he had seen two men with a baby's wagon full of household goods leave Miss Coleman's residence and go into a nearby house located at 2105 North Third Street. This information was radioed to other officers who, when Miss Coleman and the officers with her arrived at the Third Street house, were already in the process of removing appellant and co-defendant David McDonald from the house. Officer Bowie, who arrested appellant testified that he had received a radio message which told of the robbery, gave a description of the men and stated that the men had gone to a house located at 2105 North Third Street. Upon arriving at 2105 North Third Street, a Vivian McDonald, the occupant of the house and sister of co-defendant David McDonald, told Officer Bowie: "Get the thieves out of my cellar." He then went into the basement and

observed appellant hiding behind some pieces of wood. Appellant was arrested and a search revealed that he had watches taken from Miss Coleman on his person. Other items taken from Miss Coleman were found thrown about the basement. Appellant was charged, indicted and convicted in a non-jury trial of robbery.[1] Post-verdict motions were argued and denied, and appellant was sentenced to a term of imprisonment of two and one-half to ten years. No appeal was taken; but, on September 11, 1974, appellant filed a Post Conviction Hearing Act[2] petition. A hearing was held on March 6, 1975, and relief was denied. This appeal followed.

In this appeal appellant contends that his trial counsel was ineffective; and, therefore he is entitled to a new trial. Before consideration of the merits of appellant's ineffective assistance of counsel claim we must first determine if such issue is properly before our court. In *Commonwealth v. Dancer*, 460 Pa. 95, 331 A. 2d 435 (1975) our Supreme Court held that Dancer's failure to raise his ineffective assistance of counsel claim on direct appeal created "a rebuttable presumption that the failure was 'knowing and understanding' and that therefore the issue was waived." 460 Pa. at 100, 331 A.2d at 437. Dancer, however, was represented on his direct appeal by counsel other than his trial counsel and, therefore, had the opportunity to raise his trial counsel's ineffectiveness on direct appeal. In the instant case appellant decided not to take a direct appeal, on the advice of his trial counsel. As was stated in *Dancer*, supra at 100, 331 A.2d at 438, "it is unrealistic to expect trial counsel on direct appeal to argue his own ineffectiveness." Accordingly, now that appellant has different counsel, this is the first opportunity for him to raise his

---

1. Act of December 6, 1972, P.L. 1482, §1, 18 Pa. C.S. §3701 (1973).

2. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. §1180-1 *et seq.* (Supp. 1975). Hereinafter referred to as PCHA.

trial counsel's ineffectiveness. Therefore, he is permitted to do so at this time. *Commonwealth v. Lewis*, 463 Pa. 180, 182, 344 A.2d 483, 484 (1975).

First, appellant contends that his trial counsel acted incompetently in failing to file, prior to trial, a motion to suppress physical evidence confiscated from him when he was arrested. While it is true that pre-trial motions were not filed, the suppression of physical evidence issue was argued by trial counsel in an oral motion to suppress at the conclusion of the Commonwealth's case, when the Commonwealth moved for admission into evidence of the physical evidence in question. The trial judge, after consideration of the argument and the evidence which had already been introduced at the trial, denied the motion. No advantage would have been gained by arguing the motion prior to trial.

Appellant further claims, in relation to the suppression of physical evidence issue, that his trial counsel argued the oral motion to suppress in a "slipshod" manner. We need not address the manner in which trial counsel argued the motion, since the motion clearly lacked merit and could not have been properly sustained, regardless of how it may have been argued. The substance of appellant's argument is that he was arrested without probable cause and, accordingly, the subsequent search was improper. Appellant contends, citing *Betrand Appeal*, 451 Pa. 381, 386 (1973), that probable cause did not exist because a tip from an anonymous informer, standing alone, is insufficient to establish probable cause. We would accept appellant's contention if the facts established that the anonymous informant's tip was the only information on which the arrest was based; but, in the instant case there is more. After the victim had given the details of the robbery to the police, the anonymous informer stated that he saw the suspects leave the victim's home and enter a nearby house located at 2105 North Third Street. The tip also gave a description of the men and stated that the men were pulling a baby's

wagon loaded with household goods. Upon arriving at 2105 North Third Street the police were informed by the occupant of that house that the thieves were in her cellar and that she wanted them removed. Entering the cellar to investigate, the police found appellant hiding behind some pieces of wood. The arrest took place no more than thirty minutes after the robbery, and within one block of Miss Coleman's home. These facts and circumstances, which were within the knowledge of the officer at the time of the arrest, were clearly sufficient to establish probable cause; i.e., to warrant a man of reasonable caution in the belief that the suspects were committing or had committed a crime. *Commonwealth v. Norwood*, 456 Pa. 330, 332 (1974).

Appellant further claims that his trial counsel was ineffective because he failed to file, prior to trial, a motion to suppress an out-of-court identification, and a motion to suppress the in-court identification. The out-of-court identification to which appellant objects occurred approximately twenty hours after the robbery, when the victim went to the police station to pick up the items taken from her home. Appellant and David McDonald were exhibited to Miss Coleman while they were incarcerated in separate cellrooms. There is no doubt that the one-on-one station house identification was improper; however, since it was not introduced at trial by the Commonwealth the failure to file any motions pursuant to it is irrelevant. On the other hand, trial counsel's failure to file a pre-trial suppression motion in anticipation of an in-court identification does warrant some discussion, since appellant argues that the improper one-on-one station house identification tainted the in-court identification. In *United States v. Wade*, 388 U.S. 218 (1967), the United States Supreme Court was faced with the problem of whether an improper lineup tainted an in-court identification. Refusing to make a blanket rule the Court stated:

"Where, as here, the inadmissibility of evidence of

the lineup identification itself is not involved, a per se rule of exclusion of courtroom identification would be unjustified .... We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun v. United States*, 371 U.S. 471, 488, ' "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' " 388 U.S. at 240-241.

Applying this test to the instant case, we must determine whether Miss Coleman's in-court identification had an origin sufficiently independent of the improper station house confrontation to warrant its admission at trial. Miss Coleman initially viewed appellant as he approached her and spoke to her in front of her house. She also had the opportunity to observe appellant in her house, during the robbery, until a jacket was placed over her head. Furthermore, Miss Coleman observed appellant for an additional five minutes, within one-half hour after the robbery, while he was being removed from the Third Street house. This gave Miss Coleman adequate opportunity to observe appellant and provides a sufficient independent origin to sustain her in-court identification. Since, as the PCHA hearing court determined, the in-court identification was clearly proper, trial counsel's failure to object to it cannot be considered ineffective.

Affirmed.

CONCURRING OPINION BY SPAETH, J.:

I do not think an appellate court should decide whether a witness's identification was untainted; that decision should be made by a hearing judge who has received testimony on the issue. The decision is in fact outside the scope of the appellate function, since an appellate court cannot take testimony and should not

decide an issue from fragments of a record compiled for another purpose.

I nevertheless concur in the result reached by the majority since the watches were found in appellant's pocket.