STATE of Maine

v.

Keith James PARKINSON.

Supreme Judicial Court of Maine.

June 5, 1978.

2

Henry N. Berry, III, Dist. Atty., Peter G. Ballou (orally), Deputy Dist. Atty., Portland, Joanne Sataloff, Law Student, for plaintiff.

Terence Farrell (orally), Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

DUFRESNE, Active Retired Justice.[1]

Keith James Parkinson appeals from the judgments of conviction entered in the Superior Court (Cumberland County) after jury verdicts of guilty on each count of a three-count indictment, the first count charging an attempt to break and enter the apartment of Omer Breau and Connie Breau at 120 Dartmouth Street, in Portland, with intent to steal therefrom in violation of 17 M.R.S.A., § 251,[2] the second count charging the actual breaking and entering of the apartment of Gayle Reed at 469 Brighton Avenue, in Portland and stealing therefrom Ms. Reed's black onyx and diamond ring in violation of 17 M.R.S.A., § 2103,[3] the third count charging also the actual breaking and entering of the apartment of Raoul Barsalou at 16 Rudman Road, in Portland and stealing therefrom Mr. Barsalou's "Gerard Pequadant" wristwatch. The appeal is denied.

---

1. Mr. Justice DUFRESNE sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKUSICK, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

2. 17 M.R.S.A., § 251, at the time the charged offense was allegedly committed on October 23, 1975, read as follows:
"Whoever attempts to commit an offense and does anything towards it, but fails or is interrupted or is prevented in its execution, where no punishment is expressly provided for such attempt, shall, if the offense thus attempted is punishable with imprisonment for life, be imprisoned for not less than one nor more than 10 years; and in all other cases he shall receive the same kind of punishment that might have been inflicted if the offense attempted had been committed, but not exceeding ½ thereof."
17 M.R.S.A., § 251 was repealed by Public Laws, 1975, c. 499, § 5 and substituted by 17–A M.R.S.A., § 152, effective May 1, 1976.

3. 17 M.R.S.A., § 2103, at the time the charged offenses were allegedly committed on October 23, 1975, read as follows:
"Whoever, without breaking, commits larceny in the nighttime in a dwelling house or building adjoining and occupied therewith, or breaks and enters any office, bank, shop, store, warehouse, barn, stable, house trailer, mobile home, inhabitable camp trailer, vessel, trailer or semitrailer as defined in Title 29, railroad car of any kind, courthouse, jail, meetinghouse, college, academy or other building for public use or in which valuable things are kept, and commits larceny therein, shall be punished by imprisonment for not more than 15 years; and when the offense is committed in the daytime, by a fine of not more than $1,000 or by imprisonment for not more than 6 years."
17 M.R.S.A., § 2103 was repealed by Public Laws, 1975, c. 499, § 11, and substituted by 17–A M.R.S.A., § 401, effective May 1, 1976.

Parkinson bases his claim of reversible error at the trial level on the ground that his arrest by Officer Frederick Bowring of the Portland Police Department was without probable cause and in violation of his constitutional rights under the Fourth-Fourteenth Amendments to the United States Constitution[4] and under Article I, § 5 of the Constitution of Maine.[5] From that premise of an initial illegal arrest, he contends Mrs. Breau's out-of-court and in-court identification, as well as the seized plastic strips and the stereo tapes, were the "fruit of the poisonous tree" and should have been suppressed as evidence at trial. We disagree on all scores.

### Preservation of objections for appellate review

Counsel for Parkinson, prior to trial, moved to suppress for use as evidence at trial Mrs. Breau's out-of-court identification as well as her prospective in-court identification pursuant to Rule 41(e), M.R.Crim.P. The defendant also sought the suppression of the cases of tapes taken by the police from the automobile of his companion on this occasion, but did not include in his pretrial proceeding a request for the exclusion of the plastic strips seized from his person by Officer Bowring. After hearing, a Justice other than the Justice presiding at trial denied the defendant's pretrial motion to suppress the identification testimony and the use of the tapes as evidence, while granting some relief with which we are not concerned in this appeal. When such evidence was introduced at trial, however, no objections were voiced to the out-of-court identification by Mrs. Breau, nor to her

in-court identification. Insofar as the two boxes of tapes are concerned, the defendant's counsel at trial, upon the Court's inquiry from him as to any objections, answered that he had none. On the other hand, the Court ruled at trial, over the defendant's objections, that the plastic strips were admissible, because they were legally seized in the course of a lawful arrest.

 Mere failure to object at trial to the admissibility of evidence which the court in pretrial proceedings refused to suppress will not preclude appellate review of the unfavorable ruling on the motion to suppress. *State v. Hazelton*, Me., 330 A.2d 919, 922 (1975). Counsel's failure to renew at trial his objection to the evidence will not be construed as a waiver and the ruling on the motion will preserve the point on appeal, unless the record should disclose special circumstances calling for the non-application of the rule. *Taylor v. State*, 337 So.2d 773 (Ala.Cr.App.1976), cert. quashed, 337 So.2d 776 (Ala.1976). See also *State v. Connolly*, 133 Vt. 565, 350 A.2d 364, 367 (1975); *Riojas v. State*, 530 S.W.2d 298, 301 (Tex.Cr.1975); *United States v. Lemon*, 550 F.2d 467, 473 (9th Cir. 1977). Thus, the correctness of the ruling below which refused to suppress the identification testimony is properly before us for review.

 Absent special circumstances indicating a conscious and intelligent waiver at trial of any objections to evidence concerning which counsel had raised objections and the same had been overruled at a pretrial suppression hearing, counsel's statement at trial, induced by the court's express inquiry,

---

4. Amendment IV, Constitution of the United States.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

5. Article I, § 5, Constitution of Maine.

"The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation."

that he had no objection to the evidence, without more, did not constitute an abandonment of his previous position, but merely indicated his acknowledgment of the court's ruling on the issue. *State v. Richards*, 229 N.W.2d 229 (Iowa 1975); *Lawn v. United States*, 355 U.S. 339, 353, 78 S.Ct. 311, 319–320, 2 L.Ed.2d 321 (1958). But see *Martelly v. State*, 230 Md. 341, 187 A.2d 105, 107 (1963). Hence, the propriety of the ruling below which denied the defendant's pretrial motion to suppress the two boxes of tapes was properly preserved for our review.

The reviewability of the seizure of the plastic strips taken from the person of the defendant by Officer Bowring rests on other grounds. Although counsel for the defendant did, prior to trial, present to the court and press his motion to suppress testimonial evidence relating to the identification of the defendant and the real evidence consisting of the two boxes of tapes, his motion to suppress the plastic strips was made for the first time during trial. He conceded knowing the strips had been seized and were in the possession of the State. Although the trial Justice stated that the defendant should have raised this issue in his pretrial suppression motion, nevertheless, he did say he could not see any basis for excluding the plastic strips as it appeared they had been properly seized "to" a lawful arrest and denied their suppression in relation to the State's motion for their admission in evidence.

■ True, Rule 41(e), M.R.Crim.P., like Rule 41(e) of the Federal Rules of Criminal Procedure, provides that a motion to suppress evidence claimed to have been obtained by an unlawful search and seizure shall be made before trial or hearing "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." Some authorities say that this requirement of the rule implements a sound judicial practice designed to prevent interruption in the orderly course of a trial and

to avoid a break in the continuity of the jury's attention necessarily resulting from a collateral inquiry into the lawfulness or unlawfulness of evidence in connection with Fourth Amendment rights violation. However, we need not decide in this case whether the defendant would have lost his right to object to the admissibility of the plastic strips which he could have moved to suppress prior to trial, but failed to do, since the Justice below, in the exercise of discretion expressly vested in him by the rule, did not rest his decision on the untimeliness of the objection, but rather ruled on the merits of the question. In such circumstances, the issue is preserved for appellate review. See *Giacona v. United States*, 257 F.2d 450 (5th Cir. 1958), cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104; *Sumrall v. United States*, 382 F.2d 651 (10th Cir. 1967), cert. denied, 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853; *United States v. Colon*, 559 F.2d 1380, 1382, n. 1 (5th Cir. 1977).

### 1. *Legality of the arrest*

The defendant's all-embracing argument bases Parkinson's request for reversal of his convictions and for a new trial in each of the three cases on the ground that his original warrantless arrest was made without probable cause and, thus, his out-of-court and in-court identification by Mrs. Breau, the plastic strips taken from his person and the boxes of tapes removed from the car were fruits of the poisonous tree and inadmissible in evidence against him for having been obtained in violation of his rights of privacy protected by the Constitutions of the United States and of the State of Maine, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### A. *Facts*

The record evidence surrounding Parkinson's arrest may be summarized as follows: It was around 2:30 o'clock in the afternoon of October 23, 1975, when Mrs. Connie Breau, while at the kitchen window of her first floor apartment in a multiple dwelling

house numbered 120 Dartmouth Street, in the City of Portland, observed two young men approaching the rear of the building. She saw them come up the back stairs to enter the hallway. Her sixth sense caused her to slip the latch on her kitchen door for the purpose of locking herself in. At first, she elected to ignore a series of loud knocks on the door. Moments later, however, a noise like the rustling of paper attracted her attention. She then observed in the crack between the kitchen door and the door frame a plastic strip protruding about one inch and a half on the inside and moving slowly upwards toward the latch. Unnerved by the incident, she asked in a shrieking voice what they wanted. To their responsive inquiry, whether one Peter Campbell lived there,[6] she answered in the negative and put them on the defensive by saying: "Does that mean you have to break my door down?" Mrs. Breau thereafter closely followed their immediate retreat from the building. She saw them enter the automobile parked on Dartmouth Street in front of the house, a light blue Mercury sedan with a Maine license plate numbered 547–687. She had time to jot down on paper the license number before they started off without delay toward Forest Avenue.

Mrs. Breau then called the Portland police. Although the pretrial transcript would seem to indicate that Mrs. Breau's original communication to the police might have been only to the effect that two men had just tried to open her back door and that they had left in a car the license number of which was 547–687, she testified at trial that she had originally informed the police that two men had just tried to slip a piece of plastic into her door and get into her apartment and that, besides giving the license number of the fleeing car, she had also described the vehicle as a light blue Mercury and told the officer that one fellow had a full kind of fat face with black shoul-

der-length hair, while the other was a slimmer person with bushy blondish hair.

The police dispatcher promptly sent out on police radio an all-points bulletin which called for all cars to be on the lookout for a light blue vehicle with the reference Maine license number, advising that the vehicle with the two people in it had just been involved in an attempted break in an apartment at 120 Dartmouth Street.

Within minutes, the Mercury was stopped on Forest Avenue with the defendant Parkinson seated on the passenger side of the front seat, while Parkinson's companion, one Basil Ward, was driving the automobile which belonged to Ward.

While Officer Bowring and others were out searching for the car, Detective Ross and another officer were at the Breau home, where they were fully informed by Mrs. Breau respecting the details of this early afternoon shortfall burglary. As a result of police radiophonic coordination, Officer Bowring, after stopping the Ward vehicle and placing the two men under arrest, started for the Breau home for the purpose of having Mrs. Breau take a look at them. On order of Detective Ross, the two men were taken out of the police cruiser and made to stand in the street, while Mrs. Breau viewed them from her front door. She identified them as the would-be intruders into her apartment that afternoon. At this time, both men were searched thoroughly and two of the plastic strips were taken from the pocket of the defendant Parkinson.

Officer Bowring then brought the two men to police headquarters where they were booked and incarcerated. The Ward vehicle was impounded and towed to an unsecured parking lot for want of space in the police garage, after the police had removed from the car for safekeeping purposes the two boxes of stereo tapes which were in plain view in the vehicle.

6. Mrs. Breau's initial hunch was confirmed in her own mind as the fictitious Mr. Campbell had not lived in the building for at least nine years of her own occupancy.

On booking, Parkinson was relieved of his coat in the pockets of which he had three watches. When on the morning of the next day reports came to the attention of the police that two other burglaries had been committed the previous day involving Ms. Reed's stereo tapes and her black onyx and diamond ring and Mr. Barsalou's watch, these items already in possession of the police were retained by them as evidence.[7]

## B. Probable Cause

█ When the State in a prosecution involving a felony seeks to justify the admission in evidence of the fruits of a warrantless arrest, be they in the nature of identification testimony or in the form of real evidence obtained in a search of the person, vehicle or premises, the arrest itself must be based upon probable cause. *State v. York*, Me., 324 A.2d 758, 763 (1974).

█ Probable cause exists where facts and circumstances within the knowledge of the officers and of which they have reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee did commit or is committing the felonious offense. *State v. Smith*, Me., 277 A.2d 481, 488 (1971); *State v. LeBlanc*, Me., 347 A.2d 590, 593–594 (1975).

## C. Probable Cause—Substantive Law

The probable cause concept is based on an objective standard. This Court said in *State v. Heald*, Me., 314 A.2d 820, 828 (1973) that

"[p]robable cause rests on probabilities and is objective in nature. It is not whether particular officers thought or believed they had cause to arrest or search. It is rather whether on the basis of facts known or reasonably believed by him, an ordinarily prudent and cautious officer would have probable cause to arrest or search."

See also *State v. Mimmovich*, Me., 284 A.2d 282, 285 (1971).

█ Whether probable cause exists to support a warrantless arrest depends upon the totality of the facts and circumstances in a given case. *People v. McCrimmon*, 37 Ill.2d 40, 224 N.E.2d 822, 824 (1967). The question as to what particular information will suffice to establish probable cause will turn on the facts and circumstances of each case. *People v. Thornton*, 47 Ill.App.3d 604, 7 Ill.Dec. 721, 365 N.E.2d 6, 10 (1977); *State v. Curtis*, 217 Kan. 717, 538 P.2d 1383, 1389 (1975); *State v. Bean*, 280 Minn. 35, 157 N.W.2d 736, 740 (1968), cert. denied, 393 U.S. 1003, 89 S.Ct. 493, 21 L.Ed.2d 468.

█ Probable cause, however, is to be evaluated and judged on the basis of the collective information in possession of the police at the time of arrest, as the knowledge of each officer working in coordination in an attempt to solve a reported crime is the knowledge of all; thus, probable cause need not necessarily rest solely on the personal knowledge of the officer who makes the arrest. *State v. Smith*, Me., 277 A.2d 481, 488–489 (1971),[8] and cases cited therein.

█ If the arresting officers are acting on information conveyed by police transmission facilities, which by itself would not be sufficient to establish probable cause to jus-

---

7. The black onyx and diamond ring, however, and a pair of binoculars discovered by the police in the course of a full-scale search of Ward's automobile without a warrant on the morning after their arrest were suppressed for use as evidence on the defendant's motion. The correctness of this ruling is not before us for review.

8. We do not intimate that the rule in *Smith* is all-inclusive. There may be cases in which certain police information could not be considered as supportive of probable cause if not communicated. The rule must be applied on a case by case basis.

tify the arrest, then the arrest without a warrant would be illegal, unless the State produced the evidence within the knowledge of the other members of the police team on which the radio information was based and which itself singly or in conjunction with the evidence independently gathered by the arresting officers constituted probable cause. *United States v. Vasquez,* 534 F.2d 1142, 1145 (5th Cir. 1976); *Collins v. State,* 17 Md.App. 376, 302 A.2d 693, 697 (1973).

### D. Probable Cause—Procedural Law

This Court in *State v. McLain,* Me., 367 A.2d 213 (1976) delineated the procedural aspects surrounding proof of a valid consent to search. We view the *McLain* guidelines as applicable, when the issue in the case is whether probable cause exists to justify the admission in evidence of the fruits of a warrantless arrest.

■ Hence, we hold that, in the instant case where the defendant was not committing a criminal offense in the presence of the arresting officer, the State had the burden of proving by a fair preponderance of the evidence that probable cause justifying an arrest without a warrant existed. *State v. Heald,* Me., 314 A.2d 820, 829 (1973). See also *People v. Williams,* 53 Ill.App.3d 266, 11 Ill.Dec. 128, 368 N.E.2d 679 (1977); *United States v. Easter,* 552 F.2d 230 (8th Cir. 1977).

■ Whether probable cause exists to support a warrantless arrest is a question of fact and presents an issue for the Court to decide and not for jury submission. *State v. Curtis,* 217 Kan. 717, 538 P.2d 1383 (1975); *United States v. Mullen,* 416 F.2d 456 (4th Cir. 1969); *Anthony v. State,* 220 So.2d 837 (Miss.1969); *People v. Walters,* 264 Cal.App.2d 834, 70 Cal.Rptr. 766 (1968); *Commonwealth v. Femino,* 352 Mass. 508, 226 N.E.2d 248 (1967); *State v. Deltenre,* 77 N.M. 497, 424 P.2d 782 (1967), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136.

■ Furthermore, the findings of the single justice thereon will not be set aside unless clearly erroneous. *State v. MacKenzie,* 161 Me. 123, 210 A.2d 24 (1965); *People v. Clay,* 55 Ill.2d 501, 304 N.E.2d 280 (1973).

### E. Reliability of Information

■ In *State v. LeBlanc,* supra, at page 594, this Court said that an anonymous phone call was not by itself adequate to supply probable cause for arrest. Indeed, the information obtained by the police, for it to be adequate to support a warrantless arrest, must furnish underlying facts sufficiently detailed to cause a reasonable person to believe that a crime has been committed and the named or described person was the perpetrator and, secondly, it must disclose such factual data so connected with the person furnishing the information as would generate in a reasonable person a genuine belief that the informer is reliable.

"The courts have recognized a distinction between informers who are virtual agents of the police and 'citizen informants' who are chance witnesses to or victims of crime. The former are often criminally disposed or implicated, and supply their 'tips' to the authorities on a recurring basis, in secret, and for pecuniary or other personal gain. The latter are innocent of criminal involvement, and volunteer their information fortuitously, openly, and through motives of good citizenship. . . . Because of these characteristics, the requisite showing of reliability in the case of a citizen informant is significantly less than that demanded of a police informer. . . . " (citations omitted) *People v. Ramey,* 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976).

Where a citizen informant, as distinguished from the so-called "police informer," reports a crime committed in his presence with which criminal activity he was not involved or of which he was the victim, courts have not hesitated to find it reasonable for police officers to act upon such

reports on the ground that the reported statement in itself carries inherent reliability. For cases where the informant was a witness, see *Commonwealth v. Hawkins,* 240 Pa.Super. 56, 362 A.2d 374 (1976); *Lewis v. United States,* 135 U.S.App.D.C. 187, 417 F.2d 755 (1969), cert. denied, 397 U.S. 1058, 90 S.Ct. 1404, 25 L.Ed.2d 676; *People v. Hester,* 39 Ill.2d 489, 237 N.E.2d 466 (1968); *People v. Lewis,* 240 Cal.App.2d 546, 49 Cal.Rptr. 579, 582 (1966). For cases involving a victim of crime, see *Carey v. United States,* 377 A.2d 40 (D.C.App.1977); *United States v. Easter,* 552 F.2d 230 (8th Cir. 1977); *Commonwealth v. Ayers,* 239 Pa.Super. 263, 361 A.2d 405 (1976).

The reliability of the report may be enhanced by a police interview with the victim and by the other corroborating information, as it appears in this case. See *United States v. Easter,* supra; *Lewis v. United States,* supra; *People v. Chandler,* 262 Cal.App.2d 350, 68 Cal.Rptr. 645 (1968), cert. denied 393 U.S. 1043, 89 S.Ct. 670, 21 L.Ed.2d 591; *Williams v. Peyton,* 208 Va. 696, 160 S.E.2d 581 (1968).

In the instant case, it would appear that Mrs. Breau's initial report to the police disclosed her address, but not her name. The Justice below, whether at the pretrial suppression hearing or at trial, must have viewed the report as coming from an identified source, since the police within minutes were at the home of Mrs. Breau in the course of the ongoing investigation which was undertaken immediately. Even if it be assumed that the initial information obtained by the police was secured through an anonymous phone call, such would not in this case nullify the existence of probable cause at the time of the defendant's arrest. Indeed, the information relayed to the police by Mrs. Breau over the phone, confirmed directly by her in person within a few minutes after her initial report, was that of the victim of a crime which had been committed immediately prior thereto. As a matter of fact the interviewing officer noticed that she was still upset when he

talked with her to obtain greater details of the incident. Her accurate description of the would-be intruders and of the automobile in which they had left the scene, her furnishing the license number of the fleeing vehicle, the stopping of the Ward car which carried that license plate within a short time of the commission of the crime in the immediate vicinity of the place where it was committed, all this information which the police as a collective unit had in their possession at the time of arrest infused the initial telephonic report with such credibility respecting the occurrence and such reliability in regards to the informant as to warrant a prudent and cautious person to believe that the arrestee did commit the offense for which he was arrested.

Even though the record would indicate that, at the pretrial suppression hearing, the initial call to the police did not carry the details of the crime and the description of the individuals involved, at trial Mrs. Breau testified without contradiction that she had furnished the same to the police in that first communication. In determining whether probable cause existed at the time of arrest, this Court, in its appellate review, is not restricted to the evidence at the suppression hearing, where the trial Justice, as in this case, undertook at trial to adjudge anew the validity of the arrest, but we will take into consideration the whole record, including the evidence at trial. See *Commonwealth v. Howard,* 350 N.E.2d 721 (Mass.App.1976); *People v. Olajos,* 397 Mich. 629, 246 N.W.2d 828 (1976).

The general rule is that, if the evidence at the trial establishes the legality of the arrest from which evidentiary matters subsequently developed and arising therefrom depend for admissibility in evidence, a defendant cannot avail himself of any error on the motion to suppress. *Rent v. United States,* 209 F.2d 893 (5th Cir. 1954); *Commonwealth v. Young,* 349 Mass. 175, 206 N.E.2d 694 (1965); *People v. Braden,* 34 Ill.2d 516, 216 N.E.2d 808 (1966); *Rocha v.*

*United States,* 387 F.2d 1019 (9th Cir. 1967); *United States v. Bolin,* 514 F.2d 554 (7th Cir. 1975); *United States v. Smith,* 527 F.2d 692 (10th Cir. 1975); *State v. Shivers,* 346 So.2d 657 (La.1977). See also *State v. Smith,* Me., 381 A.2d 687 (1978); Contra *People v. Orozco,* 74 Mich.App. 428, 253 N.W.2d 786 (1977).

We are not dealing with the situation where the defendant prevailed at the suppression hearing. Whether the State should be given two bites at the apple, we need not decide and intimate no opinion thereon. See *People v. Bryant,* 37 N.Y.2d 208, 371 N.Y.S.2d 881, 333 N.E.2d 161 (1975).

■ We cannot say the ruling below that there existed probable cause to arrest the defendant without a warrant was clearly erroneous. The facts of the instant case bring it within the factual pattern presented by *State v. Babcock,* Me., 361 A.2d 911, 914, n. 3 (1976). Here, the police, in addition, had been given the license number of the offending vehicle. See also *State v. Little,* Me., 343 A.2d 180 (1975); *State v. Heald,* Me., 314 A.2d 820 (1973).

■ The defendant's contentions that reversible error resulted from the admission in evidence of Mrs. Breau's out-of-court and in-court identifications, of the strips of plastic and the stereo tapes, were all bottomed on the illegality of the defendant's arrest without a warrant. He did not argue their inadmissibility on other independent grounds. In that posture of the case, we could decline to review the admissibility of such evidence. See *State v. Barlow,* Me., 320 A.2d 895, 898 (1974); *State v. Campbell,* Me., 314 A.2d 398, 401 (1974); *State v. Devoe,* Me., 301 A.2d 541, 543 (1973).

In view of our right to notice obvious errors affecting the substantial rights of the accused (Rule 52(b), M.R.Crim.P.) and the importance of the issues, we are prompted to examine the questions anyway, and find that there was no error, manifest or otherwise.

### 2. Identification evidence

In *State v. York,* Me., 324 A.2d 758 (1974), this Court said at page 767:

"In other contexts, however, where the due process issue is generated by identification procedures other than the one-way mirror, and where the question is purely one of suggestiveness, it has always been the rule that relief may be granted only when the confrontation is unnecessarily suggestive *and* conducive to irreparable misidentification, based on the totality of the circumstances." (Emphasis in original)

We further stated in *York,* at page 768:

"Where, as in the present case, the confrontation takes place within minutes of the crime, it is generally agreed that the probability of accuracy resulting from such an immediate identification outweighs and offsets any likelihood of misidentification arising out of the inherent suggestiveness of the one-man viewing."

■ The facts in this case provide a greater degree of probability of accuracy and less likelihood of misidentification than in *York,* since Mrs. Breau's observations of the defendant were made at close proximity during a beautiful sunny afternoon. There was no error below. See also *State v. Coulombe,* Me., 373 A.2d 255 (1977).

### 3. Admissibility of plastic strips

■ In *State v. Hawkins,* Me., 261 A.2d 255, 261 (1970), we stated that, if an officer makes a valid arrest, either pursuant to an arrest warrant, or without an arrest warrant on probable cause, he is authorized to conduct a reasonable search incident to such arrest. *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). This reference search incident to a lawful arrest is a traditional exception to the warrant

requirement of the Fourth Amendment. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *State v. Babcock,* Me., 361 A.2d 911 (1976).

In *Babcock,* we pointed out the difference between searches of the person of the arrestee and searches of the area where the arrestee happens to be, made under the rubric of searches incident to a valid arrest. Insofar as the incidental right to search areas within the arrestee's control, we said that to be legal such searches must not be remote in time or place from the arrest. Id. at page 915. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *State v. LeBlanc,* Me., 347 A.2d 590, 594 (1975). On the other hand, in *Babcock,* we adopted the *Robinson* rule to the effect that a full search of the arrestee's person is reasonable in the case of a lawful custodial arrest. Id. at page 915.

Furthermore, we followed the great weight of authority when, in *State v. Dubay,* Me., 338 A.2d 797 (1975), we extended the doctrine of searches incident to a valid arrest to cover the full search of the arrestee's person at the jail or place of detention as distinguished from the search of his person made contemporaneously with the arrest at another location. *Commonwealth v. Bundy,* 458 Pa. 240, 328 A.2d 517 (1974); *State v. Troy,* 215 Kan. 369, 524 P.2d 1121 (1974); *Bell v. State,* 281 A.2d 151 (Del. 1971); *State v. Murray,* 445 S.W.2d 296 (Mo.1969).

 That the search of the defendant's person which produced the plastic strips took place at the scene of the crime instead of at the time of arrest, but prior to reaching the jailhouse, does not invalidate the search. There is no question that, if Officer Bowring had made a full search of the defendant's person at the point of ar-

rest and had come up with the plastic strips at that time, the search would have been reasonable as a search incident to a valid arrest. We rule it to be within the holding of *State v. Dubay,* supra, that, upon the taking into custody of a person following a legal arrest, such a search of the arrestee as would be reasonable if made by the officer at the time and place of arrest may be made by him as a continuing incident of the arrest at any time in the course of transporting the arrested person to jail. *State v. Florance,* 270 Or. 169, 527 P.2d 1202 (1974); *Lara v. State,* 469 S.W.2d 177 (Tex.Cr.App. 1971), cert. denied, 404 U.S. 1040, 92 S.Ct. 724, 30 L.Ed.2d 732.[9]

There was no error in the admission in evidence of the plastic strips found on the defendant's person by Officer Bowring.

### 4. *Admissibility of stereo tapes*

The stereo tapes were taken by the police from Ward's automobile as a protective measure, given the fact the car was being removed from the public street to an unsecured parking lot. The record clearly shows that these tapes were in plain view in the vehicle and were brought under police custody and control some time during the same afternoon after Ward and the defendant had been arrested. At the time, the police had no knowledge these tapes had been stolen, since it was only the next day that they were alerted another apartment had been burglarized on the twenty-third of October in which the stereo tapes removed from the Ward car matched the description of the property stolen in one of the burglaries.

 Parkinson's attack upon the admissibility of the stereo tapes in evidence, even if grounded upon an alleged unconsti-

**9.** For other authorities upholding searches as incident to arrest, where the searches were made between the place of arrest and jail, see: *State v. Castagna,* 170 Conn. 80, 364 A.2d 200 (1976); *United States v. DeLeo,* 422 F.2d 487 (1st Cir. 1970), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648; *State v. Adams,* 80 N.M. 426, 457 P.2d 223 (1969).

tutional seizure, must fail as he lacks standing to raise the issue, since his personal rights were not infringed at the time. The seizure of property from another's automobile is not an invasion of a passenger's constitutional immunity from unreasonable searches and seizures, once the third party's status as a passenger has ended. The present record discloses no possessory interest in the defendant respecting the automobile from which the tapes were removed; rather, it affirmatively shows that the car belonged to Ward and was being driven by him and under his control. If a warrantless search, or seizure as in this case, is made of or from an automobile not the property of the accused and it appears that the accused had no possessory rights thereto such as by exercising control over it by reason of his driving the same, the accused has no standing to invoke constitutional guarantees to exclude evidence obtained by the warrantless search or seizure. See *State v. Littlefield*, 161 Me. 415, 213 A.2d 431 (1965); *Bradshaw v. State*, 192 So.2d 387 (Miss. 1966), cert. denied, 389 U.S. 941, 88 S.Ct. 299, 19 L.Ed.2d 293; *Manson v. State*, 249 Ind. 53, 229 N.E.2d 801, 803 (1967); *People v. Arnold*, 91 Ill.App.2d 282, 233 N.E.2d 764 (1968); *People v. Avery*, 31 A.D.2d 885, 298 N.Y.S.2d 104 (1969); *United States v. Kilgen*, 445 F.2d 287, 289 (5th Cir. 1971); *Hill v. State*, 500 P.2d 1080 (Okl.Cr.1972); *State v. Gallagher*, 162 Mont. 155, 509 P.2d 852, 859 (1973); *Kay v. State*, 489 S.W.2d 861, 862 (Tex.Cr.App.1973); *State v. Griffin*, 217 Kan. 703, 538 P.2d 720, 722 (1975); Contra: *Kleinbart v. State*, 2 Md.App. 183, 234 A.2d 288, 303 (1967).

◼ As stated in *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969):

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. *Coconspirators and codefendants have been accorded no special standing.*" (Emphasis supplied)

We do not intimate any opinion respecting the admissibility of the stereo tapes as against the codefendant Ward, the owner and driver of the automobile from which the police removed the tapes which were in plain view.

There was no error below of which Parkinson may complain and the entry will be

Appeal denied.

Judgments affirmed.

GODFREY, Justice, concurring in the result:

I reach the same result but on different grounds.

## I. *Probable Cause*

Appellant challenges the trial court's determination that the police had probable cause to arrest him and urges that evidence obtained as a result of the arrest should have been suppressed. The trial court's decision had to be based on facts that the court found were known to the police at the time of the arrest. Probable cause to arrest may be based on the collective knowledge of the police, rather than solely on that of the arresting officer, when there is some degree of communication between the two. *United States v. Vasquez*, 534 F.2d 1142 (5th Cir. 1976); *United States v. Nieto*, 510 F.2d 1118 (5th Cir. 1975), cert. denied, 423 U.S. 854, 96 S.Ct. 101, 46 L.Ed.2d 78 (1975). The police may communicate a conclusion and the recipient may rely on it, but the basis of the conclusion is subject to scrutiny in determining probable cause. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). The law enforcement authorities are also entitled to some leeway when they communicate among themselves. Thus, when there is some communication unspoken but implied, details may be shown

to justify probable cause. *Smith v. United States*, 123 U.S.App.D.C. 202, 358 F.2d 833, *cert. denied*, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967). Dicta in *State v. Smith*, Me., 277 A.2d 481, 488–489 (1971) might be construed as indicating that no communication is required. However, the cases discussed and relied upon in *State v. Smith* do not depart from the rules set out above. The issue concerns the import of the Fourth Amendment and is a federal constitutional question.

The majority opinion assumes that all information known to the various police officers at the time of the arrest can be relied on to show probable cause, disregarding the fact that there had been no communication of certain parts of that information by the time of the arrest. The opinion also relies in part on facts which were not yet known to the police at the time of the arrest and which could not be properly inferred from facts which the trial court might have found. The case is complicated by the absence of testimony of the dispatchers. The trial court was required to infer what the dispatcher knew from testimony of the complainant.

The testimony at the suppression hearing tended to show that on the afternoon of October 23, 1975, the Portland police received a call concerning an attempted break-in. The woman caller apparently said that two men had just tried to open the back door of her apartment at 120 Dartmouth Street. She apparently told the dispatcher that the two men had just left in a light blue car with license number Me. 547–687. At trial, the complainant testified that she gave the police a description of the

two men. She did not indicate the nature of that description nor was she specific concerning the exact time when she gave the description. At the earlier suppression hearing she stated specifically that she did not give a description to the police until they arrived at her house.[1] The testimony indicated that by the time the officers arrived at the house appellant and his companion had already been arrested.

Before the officers interviewed the complainant at the scene, the police dispatcher had promptly sent out on police radio an all-points bulletin which called for all cars to be on the lookout for a light blue vehicle with Maine license number 547–687, advising that the vehicle with the two persons in it had just been involved in an attempted break into an apartment at 120 Dartmouth Street. Within minutes, Officer Bowring stopped a car meeting the description on Forest Avenue, with the defendant Parkinson seated on the passenger side of the front seat. Parkinson's companion, Basil Ward, was driving the automobile, which belonged to Ward. Officer Bowring promptly placed appellant and Ward under arrest. Appellant and Ward were subsequently taken to 120 Dartmouth Street for identification, and tangible evidence was found as a result of the arrest and the impoundment of the car.

If the police were justified in relying on the information concerning the break, they undoubtedly had cause to make an investigatory stop of the car. It had been sighted within minutes of the complaint and met the description. The majority opinion contains an analysis purporting to show that the dispatcher was warranted in crediting

---

1. The proposed opinion of the court properly points out that a reviewing court may rely on facts developed at trial to justify a finding that the police acted with probable cause. However, where, as here, the witness specifically and clearly testified on the matter at the suppression hearing and then later gave ambiguous testimony which could conceivably be viewed as contradicting the previous story, the clear, specific testimony must be taken as the testimony of the witness. By the time of trial, the suppression issue had already been determined; so appellant's counsel had no reason to clarify a possible ambiguity in the witness's testimony concerning the times of her communication with the police. Further examination concerning her prior statements might have clarified the testimony but might also have strengthened the testimony of the witness in the eyes of the jury.

the information from the caller. However, the analysis relies, in part, on information not known to the police at the time of the arrest. The testimony did not establish that the complainant gave detailed information before the time of the arrest. It did not establish, for example, that before then the police knew the complainant was upset. The record shows that appellant and his companion had been stopped before the police interviewed the complainant at the scene. In addition, the record affirmatively shows that information from that interview had not been communicated to the arresting officers before the arrest.

The police were justified in relying on the information concerning the break. Since information from anonymous informants is somewhat suspect, the informant's reliability must be shown and the information corroborated to some extent. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The testimony in the present case indicates that at the time of the initial communication the police were justified in believing that their informant was the victim of the crime. Though the police may not have had her name, they had her address, and she appeared to be an ordinary citizen. Where a citizen informant, as distinguished from a "police informer", reports a crime committed in his presence of which he is the victim, it is reasonable for police officers to rely on such statements because they tend to be reliable. *Brown v. United States*, 125 U.S.App.D.C. 43, 365 F.2d 976 (1966). *See, United States v. Easter*, 552 F.2d 230 (8th Cir. 1977); *People v. Ramey*, 16 Cal.3d 263, 127 Cal. Rptr. 629, 545 P.2d 1333 (1976). In the present case the police were justified in relying on the information actually provided by the citizen informant because, in the circumstances, they were entitled to believe it without corroboration.

The question thus becomes whether the police, having information that two people in a blue vehicle with stated license number have just been involved in an attempted break, have probable cause to arrest two occupants of a vehicle meeting the description sighted nearby within minutes of the report. In view of the close proximity in place and time and the precise identification of the car, the finding of probable cause for arrest was justified.

## II. *Standing to Object to Search and Seizure*

The majority opinion also deals with appellant's attempt to suppress the fruits of an inventory search of the car after it had been impounded. The opinion asserts that appellant lacks standing to object to the inventory because he had no ownership interest in the car and was no longer in it. On the facts of this case, I cannot agree.

Ordinarily, a guest does not have standing to object to a search after he has moved on. However, that rule is based on the fact that he has abandoned the place that he left. Under *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) a person has standing to object to a search if he has a reasonable expectation of privacy in the place searched. A guest has such an interest in the private place he occupies. Though this interest ends when the guest leaves in the natural course of events, there is no reason why the interest should cease when the guest is compelled to leave by an arresting police officer.

In addition, appellant may also have been entitled to automatic standing under *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). *But see Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). The automatic-standing cases grant standing when the person is charged with personally possessing the challenged evidence. Here it appears that the evidence was used against appellant to establish his possession in order to justify an inference of burglary from the possession of recently burgled goods.

Since, in my opinion, appellant had standing to suppress the fruits of an illegal search of the car, the legality of the search must be examined. Testimony at the suppression hearing which the trial justice was entitled to credit tended to support the following conclusions of fact: Appellant

and his companion were arrested when the car they were riding in was stopped on Forest Avenue in Portland. After the arrest the police had the car towed to police headquarters. The police were unable to get the car into the police garage, and it was determined that the car would have to be stored on an open lot. Before moving the car to the storage lot the police removed items which were sitting on the front seat and put them in the property room. They did not then search the car or secure any items that were not visible from outside the car. In his motion to suppress, appellant objected to the introduction of the items removed from the front seat of the car.

Securing of property in a lawfully impounded automobile in accordance with standard police procedures is not an unreasonable search and seizure under the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The trial court was justified in finding that the impoundment was lawful and that the items were removed in a legitimate attempt to secure the car. They were properly admitted in evidence.