# STATE of Maine

v.

# David BOYLAN.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 7, 1995.

Decided Oct. 12, 1995.

R. Christopher Almy, District Attorney, Jeffrey Silverstein, Assistant District Attorney, Bangor, for the State.

Wayne R. Foote, Foote & Temple, Bangor, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

David Boylan appeals from a judgment of conviction entered after a jury trial in the Superior Court (Penobscot County, *Mead, J.*) for operating a motor vehicle with excessive blood-alcohol in violation of 29 M.R.S.A. § 1312–B.1.B. (Pamph.1994).[1] On appeal Boylan contends that the State lacked probable cause to arrest him and urges that prosecutorial misconduct during closing argument denied him a fair trial. We affirm the judgment.

In the early morning hours of April 3, 1993, an Orono police officer stopped the vehicle operated by Boylan after watching him leave a downtown block where several bars are located, circle the block, and make a right turn off Main Street without signalling. Earlier that evening the officer had had occasion to stop Boylan and had smelled liquor on Boylan's breath. When the officer stopped Boylan for making the unsignalled turn, the officer again smelled liquor on Boylan's breath and noted Boylan's eyes were red and glassy. Boylan acknowledged to the officer he had consumed some alcohol.

On the basis of the officer's observations of Boylan earlier in the evening and following the stop and Boylan's performance on four field sobriety tests, the officer took Boylan into custody, transported him to the Orono Police Station, and administered a breath test using an instrument known as an Intoxilyzer 5000. The officer did not check the calibration of the Intoxilyzer immediately before administering the test. The Intoxilyzer test resulted in a reading of 0.13% by weight of alcohol in Boylan's blood.

The State charged Boylan with operating a motor vehicle while having excessive blood-alcohol.[2] Boylan's motion to suppress the results of his blood-alcohol test on the grounds of lack of probable cause and his motion for a mistrial on the grounds of misconduct in the State's closing argument were denied.

I.

■ Boylan argues that the officer's observations and the results of the four field sobriety tests did not constitute probable cause[3] to arrest him.

When the State in a prosecution involving a felony seeks to justify the admission in evidence of the fruits of a warrantless arrest, be they in the nature of identification testimony or in the form of real evidence obtained in a search of the person, vehicle or premises, the arrest itself must be based upon probable cause.

*State v. Parkinson,* 389 A.2d 1, 8 (Me.1978) (citing *State v. York,* 324 A.2d 758, 763 (Me. 1974)).

■ Probable cause is a mixed question of fact and law. A trial court's finding that there was probable cause to arrest will be reversed only if clearly erroneous. *State v. Parkinson,* 389 A.2d at 9. A finding of fact is not clearly erroneous if there is *any* competent evidence in the record to support the finding. *State v. Foster,* 566 A.2d 1084, 1086 (Me.1989).

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Me. Const. art. I, § 5.

The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation.

---

**1.** 29 M.R.S.A. § 1312–B (Pamph.1994) provides in pertinent part:

 1. Offense. A person is guilty of a criminal violation under this section if he operates or attempts to operate a motor vehicle:

 A. While under the influence of intoxicating liquor or drugs or a combination of liquor and drugs; or

 B. While having 0.08% or more by weight of alcohol in his blood.

 1–A. Pleading and proof. The alternatives defined in subsection 1, paragraphs A and B may be pleaded in the alternative. The State may, but shall not be required to, elect prior to submission to the fact finder.

**2.** 29 M.R.S.A. § 1312–B.1.B (Pamph.1994).

**3.** U.S. Const. amend. IV.

Probable cause to arrest exists when facts and circumstances of which the arresting officer has reasonably trustworthy information would warrant an ordinarily prudent and cautious police officer to believe the subject did commit or was committing a crime. *State v. Parkinson*, 389 A.2d at 8. The test is objective. *State v. Enggass*, 571 A.2d 823, 825 (Me.1990). The test is not whether a particular arresting officer believed he had cause to arrest. The test is rather whether on the basis of reasonably trustworthy available information the generic "ordinarily prudent and cautious officer" would have probable cause to arrest. *State v. Heald*, 314 A.2d 820, 828 (Me.1973).

Having stopped Boylan, an ordinarily prudent and cautious officer, smelling liquor on Boylan's breath for the second time in one evening and seeing his bloodshot glassy eyes, would have reason to require Boylan to undergo field sobriety testing. The observations the officer made of Boylan while he administered the four tests constitute probable cause to believe Boylan had been operating under the influence and to take Boylan into custody. Boylan had to use his arms to maintain his balance while standing on one leg and while walking heel-to-toe. The officer had to instruct Boylan three times to print the alphabet, the date, and the time on the card the officer provided, even after the officer told the defendant the date and the time. The question of probable cause is whether an ordinarily prudent and cautious officer on the basis of all the facts and circumstances could have formed a reasonable belief that the defendant was driving while intoxicated. The totality of facts and circumstances in evidence on the record here combine to constitute probable cause to arrest David Boylan for driving while having excessive blood-alcohol. The trial court did not commit clear error in finding probable cause to arrest and in denying Boylan's motion to suppress the results of his blood-alcohol test.

## II.

Boylan sought a mistrial on grounds that the State in rebutting Boylan's closing argument raised arguments on facts not in evidence and offered a prosecutor's personal opinion as to the "credibility" of evidence. Both actions, if they occurred, would be prosecutorial misconduct in violation of M.Bar R. 3.7(e)(2).[4]

We review in two stages a trial court's decision, after objection was raised at trial, that no prosecutorial misconduct occurred: 1) whether prosecutor's conduct was improper and 2) if so, whether such improper conduct is harmless error pursuant to M.R.Crim P. 52(a).[5] *See State v. Pineau*, 463 A.2d 779, 781 (Me.1983). Because we find the State's rebuttal argument proper, we need not consider the question of harmless error.

Boylan's argument centers on a summary of the results of weekly calibration checks made over a period of months on the Intoxilyzer instrument by the Orono Police Department. He argues that these weekly checks provide no useable information about the performance of the Intoxilyzer on the specific night it was used to test his blood-

4. M.Bar R. 3.7(e) provides in pertinent part:
 (2) In appearing in a professional capacity before a tribunal, a lawyer shall not:
 (i) Intentionally misquote to a judge, jury, or tribunal the language of a book, statute, or decision or, with knowledge of its invalidity and without disclosing such knowledge, cite as authority, a decision that has been overruled or a statute that has been repealed or declared unconstitutional;
 (ii) State or allude to any matter that the lawyer has no reasonable basis to believe is relevant or will not be supported by admissible evidence;
 (iii) Ask any question that the lawyer has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person;

(iv) Assert personal knowledge of the facts at issue, except when testifying as a witness;
(v) Assert a personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but a lawyer may argue, on the lawyer's analysis of the evidence, for any position or conclusion with respect to the matters stated therein; or
(vi) Engage in undignified or discourteous conduct that is degrading to a tribunal.

5. M.R.Crim.P. 52 provides in pertinent part:

 (a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

alcohol and the State's rebuttal references to the reliability of the instrument that night therefore constitute argument on facts not in evidence.

The State at length questioned the expert witness who testified for the defense that the summary of weekly checks did not guarantee the instrument's reliability on the night of the test, asking him to explain to the jury the purpose and method of the calibration checks and how the results are interpreted.

The State is free to argue based on this witness's testimony that the Intoxilyzer was reliable the night it was used to test Boylan's blood-alcohol level. As the witness testified, in 445 calibration checks done over several months prior to the night of Boylan's arrest, only four results had deviated from the accepted range. In all four instances the Intoxilyzer gave low readings for the sample alcohol level. The State did not argue that such deviations implied the machine always would read low, but only that the history of calibration tests supported an inference that the machine was reliable the night it was used to test Boylan.

The State's rebuttal argument based on the expert witness's testimony does not constitute argument on facts not in evidence. The jury could infer from the expert witness's testimony on cross-examination that the Intoxilyzer reliably tested Boylan's blood-alcohol level and showed it to be over the legal limit.

██ Boylan argues further that a State comment during rebuttal concerning the purpose for admitting the summary of calibration checks in evidence constituted improper personal opinion as to the "credibility" of the evidence. The prosecutor's statements in rebuttal that the State presented the calibration evidence to allow jury deliberations "in proper context" do not constitute personal opinion as to the reliability of the data.

The entry is:

Judgment affirmed.

All concurring.